**In re PARIS AIR CRASH OF MARCH 3, 1974.\***
**MDL 172.**

United States District Court, C. D. California.

Nov. 20, 1975.

\*    MEMORANDUM OPINION AND ORDER FOR SEPARATE TRIALS
FILED NOVEMBER 20, 1975

In Re the Following Cases:

| | | | | | | |
|---|---|---|---|---|---|---|
| 74–698 | 74–3678 | 75–259 | 75–436 | 75–524 | 75–651 | 75–720 |
| 74–808 | 74–3771 | 75–260 | 75–437 | 75–525 | 75–652 | 75–725 |
| 74–884 | 75–14 | 75–261 | 75–438 | 75–526 | 75–653 | 75–726 |
| 74–962 | 75–15 | 75–262 | 75–439 | 75–529 | 75–654 | 75–727 |
| 74–1034 | 75–16 | 75–263 | 75–440 | 75–583 | 75–655 | 75–728 |
| 74–1113 | 75–17 | 75–264 | 75–441 | 75–595 | 75–656 | 75–729 |
| 74–1114 | 75–18 | 75–265 | 75–442 | 75–627 | 75–657 | 75–730 |
| 74–1115 | 75–19 | 75–266 | 75–443 | 75–628 | 75–658 | 75–731 |
| 74–1116 | 75–20 | 75–267 | 75–444 | 75–629 | 75–659 | 75–732 |
| 74–1261 | 75–21 | 75–268 | 75–445 | 75–630 | 75–660 | 75–733 |
| 74–1363 | 75–22 | 75–270 | 75–446 | 75–631 | 75–661 | 75–738 |
| 74–1513 | 75–52 | 75–374 | 75–447 | 75–632 | 75–662 | 75–739 |
| 74–1514 | 75–53 | 75–418 | 75–448 | 75–633 | 75–663 | 75–765 |
| 74–1515 | 75–54 | 75–419 | 75–449 | 75–634 | 75–664 | 75–784 |
| 74–1517 | 75–55 | 75–420 | 75–450 | 75–635 | 75–665 | 75–789 |
| 74–1689 | 75–56 | 75–421 | 75–451 | 75–636 | 75–666 | 75–790 |
| 74–1765 | 75–57 | 75–422 | 75–452 | 75–637 | 75–667 | 75–1238 |
| 74–1993 | 75–58 | 75–423 | 75–453 | 75–638 | 75–668 | 75–1239 |
| 74–2002 | 75–59 | 75–424 | 75–454 | 75–639 | 75–669 | 75–1347 |
| 74–2003 | 75–60 | 75–425 | 75–455 | 75–640 | 75–670 | 75–1585 |
| 74–2004 | 75–61 | 75–426 | 75–456 | 75–641 | 75–671 | 75–2750 |
| 74–2005 | 75–66 | 75–427 | 75–457 | 75–642 | 75–672 | 75–2751 |
| 74–2006 | 75–123 | 75–428 | 75–507 | 75–643 | 75–673 | 75–3607 |
| 74–2007 | 75–252 | 75–429 | 75–517 | 75–644 | 75–674 | 75–3626 |
| 74–2065 | 75–253 | 75–430 | 75–518 | 75–645 | 75–675 | 75–3750 |
| 74–2140 | 75–254 | 75–431 | 75–519 | 75–646 | 75–685 | |
| 74–2401 | 75–255 | 75–432 | 75–520 | 75–647 | 75–686 | |
| 74–3440 | 75–256 | 75–433 | 75–521 | 75–648 | 75–688 | |
| 74–3603 | 75–257 | 75–434 | 75–522 | 75–649 | 75–701 | |
| 74–3638 | 75–258 | 75–435 | 75–523 | 75–650 | 75–702 | |

James G. Butler, Los Angeles, Cal.,
Lee S. Kreindler, New York City,
Gerald C. Sterns, San Francisco, Cal.,
Co-Lead Counsel, Wm. Marshall Morgan, Los Angeles, Cal., Liaison Counsel,
Donald W. Madole, Chairman, Washington, D. C., Daniel S. Cathcart, Los Angeles, Cal., Richard F. Krutch, Seattle,
Wash., Discovery Committee, F. Lee
Bailey, Boston Mass., and Aaron J.
Broder, by Seymour Madow, New York
City, Butler, Jefferson & Fry by
James G. Butler, James M. Jefferson,
Jr., Robert P. Fry, Michael A. K. Dan,
Chase, Rotchford, Drukker & Bogust by
Henry J. Bogust, Los Angeles, Cal., Goldfarb & Singer, Washington, D. C., Green,
Royce & Seaman by Irving H. Green,
Hodge & Hodges by John R. Skoog, Horgan & Robinson by Mark P. Robinson,
Los Angeles, Cal., Kreindler & Kreindler
by Lee S. Kreindler, Melvin I. Friedman,
Marc S. Moller, New York City, Krutch,
Linsell, Donnelly, Dempcy, Lageschulte

& Judkins, P. S. by Richard D. Krutch, Vernon T. Judkins, Seattle, Wash., Lewis, Wilson, Cowles, Lewis & Jones, Ltd. by Richard H. Jones, Arlington, Va., McGrail & Nordlund, Alexandria, Va., by Joseph V. McGrail, Magana & Cathcart by Daniel C. Cathcart, James J. McCarthy, Los Angeles, Cal., Morgan, Wenzel & McNicholas by Wm. Marshall Morgan, David Noble, Los Angeles, Cal., Paul, Weiss, Rifkind, Wharton & Garrison by Joseph S. Iseman, John J. O'Neil, New York City, Ray, Quinney & Nebeker by Marvin Bertoch, L. Ridd Larson, Salt Lake City, Utah, Shahin & Wawro by James Wawro, Los Angeles, Cal., Sherman & Schwartz, Inc. by Arthur Sherman, Beverly Hills, Cal., Speiser & Krause by Stuart M. Speiser, Charles F. Krause, New York City, Speiser, Krause & Madole by Donald W. Madole, A. George Glasco, Washington, D. C., Walkup, Downing & Sterns by Gerald C. Sterns, Thomas G. Smith, Terence J. O'Reilly, San Francisco, Cal., Walsh & Levine by Laurence W. Levine, New York City, for plaintiffs.

Gibson, Dunn & Crutcher by Robert Forgnone, Kirtland & Packard by Robert C. Packard, Jacques Soiret, Los Angeles, Cal., Mendes & Mount by James M. FitzSimons, Joseph Asselta, New York City, Tuttle & Taylor by William A. Norris, Joseph R. Austin, Marilyn T. Clare, Andrew Schepard, Charles B. Rosenberg, Andrew Schepard, Los Angeles, Cal., for McDonnell Douglas Corp.

Overton, Lyman & Prince by Fred S. Lack, Jr., Ernest E. Johnson, Brenton F. Goodrich, Gregory A. Long, Los Angeles, Cal., for General Dynamics Corp.

Adams, Duque & Hazeltine by Thomas F. Call, Los Angeles, Cal., Condon & Forsyth by George N. Tompkins, Jr., Desmond T. Barry, Jr., Frank A. Silane, New York City, Latham & Watkins by Philip F. Belleville, A. Victor Antola,

Thomas L. Harnsberger, Los Angeles, Cal., Milbank, Tweed, Hadley & McCloy by Edward J. Reilly, Russell E. Brooks, New York City, Shaw, Pittman, Potts & Trowbridge by Phillip D. Bostwick, Jay H. Bernstein, Washington, D. C., for Turkish Airlines, Inc.

William D. Keller, U. S. Atty. by James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., George E. Farrell, John Laughlin, Sp. Atty., Herbert L. Lyons, Sp. Atty., Torts Section, Aviation Div., (202) 739–4317 (Laughlin); (202) 739–3391 (Lyons), Neil Eisner, AGC–42 Federal Aviation Administration, Washington, D. C., for the United States.

## MEMORANDUM OPINION AND ORDER FOR SEPARATE TRIALS

PEIRSON M. HALL, Senior District Judge.

The general nature of the cases arising from the Paris air crash of March 3, 1974, and the resulting complexities are set out in the Memorandum of this Court on the question of the applicable choice of law on damages, filed August 1, 1975, D.C., 399 F.Supp. 732, and need not be repeated here except as necessary.

The matter immediately before the Court involves the various motions for separate trials, and the oppositions thereto, filed by the several parties in these cases.

It first appeared that the motions had become moot after the announcement in open court on May 27, 1975, by McDonnell Douglas, General Dynamics, and Turkish Airlines that agreement had been reached which would eliminate issues of liability and which would permit prompt proceedings on the question of damages.[1] On such representation by defendants, the Court stayed discovery until June 16, then to July 8,

---

1. Nothing was said in the agreement or in court about the fourth defendant, the United States of America; but it has since been revealed in open court that, by agreement with one or all of the other defendants, the United States would not be required to defend any suit.

and then until August 25, 1975, for a report on progress on settlement.

As pointed out in this Court's previous opinion on "choice of law," the agreement was shown to the Court *in camera;* and upon consent of defendants, the Court made a brief, but not full, statement of its contents in open court and returned it to defendants. Upon order, it has since been filed with the Court *in camera*. The agreement is dated July 8, 1975.

The Court indicated to counsel that unless there was substantial progress on settlement of the 337 death claims by August 25, 1975, the stay of discovery would be lifted and the parties would proceed with discovery so that it would be completed and the plaintiffs' cases on death claims disposed of by trial as soon as possible.

On August 25, 1975, no cases had been settled, nor had any formula for settling them been reached, but all parties agreed that sufficient progress had been made to warrant the Court in further staying discovery to permit the parties in good faith to continue their efforts at settlement of the damage claims. The matter was continued to October 6, 1975, for further report.

As indicated in the Memorandum on damages, three teams were designated for defendants to negotiate with different sets of plaintiffs' counsel. The Court was of the distinct impression that by creating the teams, each team would have full authority to make a firm and agreed amount of settlement in each case which would be binding on all defendants who were parties to the agreement. Each of the defendant teams indicated that they were ready to negotiate immediately and that each team had sufficient personnel so that the plaintiffs would not have to deal with just one person or one firm.[2] This was necessary because it would take about as long for one person or one firm to negotiate settlement with the more than 1100 claimants for the 337 decedents as it would to try the question of damages as to each decedent.

In this Court's experience, it takes an average of two days to try death damages, or a total of 674 trial days for the 337 decedents. Allowing five trial days a week and 52 weeks a year, trial on damages alone would take over two and a half years.[3] This does not take into consideration the probable necessity for interpreters, which would lengthen the estimate.

At the hearing on October 6, 1975, there were conflicting reports on the numbers and the timing of various demands, offers, counter-demands, and counter-offers. It appeared that there had been a flurry of activity by defendants as the hearing date drew near, much the same as there had been just prior to the preceding hearing on August 25. It was announced that a settlement figure had been reached in only three cases, each involving a single decedent, out of the 205 cases and 337 decedents.[4]

While some delays were occasioned by the need of some groups to get actuarial information based on this Court's Memorandum on damages filed August 1, 1975, D.C., 399 F.Supp. 732, it appears from the October 6 hearing that instead of leaving the amount of settlement to the other negotiators, the final word on all settlements must come from one man, viz., one of 10 attorneys who have appeared in court from time to time for McDonnell Douglas. This fact alone suggests the possibility that the good faith anxiety to settle these cases quickly might be more of a gloss on the oft-

---

2. See transcripts of July 8 and 9, 1975.

3. No allowance is made for vacations or illness in this estimate, nor for trial or hearing of other matters.

4. At that rate (one a month), it would take 337 months, or more than 28 years, to settle these cases, which is 25 years longer than the estimate of the trial on damages!

expressed desire of McDonnell Douglas for early disposition than an abiding will to dispose of these cases promptly. This Court cannot in any justice whatsoever permit a procedure which holds up the finality of the rights of over 1100 claimants for years, either by settlement or by delaying trial, to be asserted or allowed by one man.

What emerges is a serious doubt as to the likelihood of early settlements. This is fortified by the history of this litigation to date; and what seems to loom is the necessity for trial, not only of damages but also of liability. Especially is this so in view of the point-blank refusal of all defendants to settle unless punitive damages are entirely waived. Such waiver is extremely improbable in view of the insistence of at least two groups of plaintiffs in pursuing their demands for punitive damages.

Accordingly, the Court concludes that the motions for separate trials on liability must now be decided.[5]

■■■ Where actions are consolidated and transferred for pre-trial proceedings pursuant to 28 U.S.C. § 1407, the decision whether to consolidate or to separate certain actions is addressed to the sound discretion of the district judge. A Rule 42 motion is a pre-trial proceeding, and it is appropriate that it be decided by the transferee judge. *In re Cessna Aircraft Distributorship Antitrust Litigation*, 359 F.Supp. 543 at 544 (Jud.Pan.Multi.Lit.1973). Even if this were not so, all but 12 of the plaintiffs' cases were filed in this district and would be remanded for trial to this district at the conclusion of proceedings under 28 U.S.C. § 1407.

While jurisidiction of these cases exists under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (Congressional acts regulating commerce), and 28 U.S.C. § 1332 (diversity) and the Federal Rules of Civil Procedure control procedures in this court, it is noted that the language of the California Code of Civil Procedure, Section 1048, is identical to that in Rule 42 of the Federal Rules of Civil Procedure. The legislative history of the California Code section shows that the wording was changed to conform to the Federal Rule and to make it clear that the trial judge has discretion to order separate trials of separate issues, in accordance with the Federal Rules, a point which had not been clearly defined before the California revision.

Instead of referring to the motions of the several parties, it will be clearer to state their final position on the subject as developed during arguments in which all parties participated and during which they sometimes took positions different from their original positions, which is certainly not to their discredit. The Court was looking for guidance in light of the position of other counsel and in view of seeking a fair consideration of the over-all situation looking toward early disposition of the cases claiming damages for the deaths of the human occupants of the planes.

These positions were taken before the agreement mentioned earlier herein between McDonnell Douglas, General Dynamics, and Turkish Airlines.[6] (The United States is not a party to the agreement.)

The positions, generally stated, were:

1. McDonnell Douglas's position was to separate out Turkish Airlines' hull suit and try it first, then try the plaintiffs' claims, all other claims, third-party complaints, cross-claims, and count-

---

5. The conclusions herein reached do not affect the obligations or the relations between the defendants created or settled by the hereinbefore mentioned agreement between them dated July 8, 1975.

6. This agreement was for sharing liability under certain conditions and for settlement of Turkish Airlines' suit against McDonnell Douglas for damage to the hull, but not for settlement of Turkish Airlines' suit for other damages.

er claims in one trial. McDonnell Douglas later suggested that the hull suit be put aside and that all suits against Turkish Airlines be tried first. At all times McDonnell Douglas insisted that they would be irreparably injured if all defendants were not joined in the same trial because of the provisions of California Code of Civil Procedure § 875 requiring a joint judgment as a prerequisite for seeking contribution or indemnity. Since the settlement and dismissal of the hull suit, Turkish Airlines has amended its complaint to claim only $5,200,000 for loss of use of the destroyed plane, $500,000 miscellaneous damages, and punitive damages for $20,000,000, none of which are of any concern to the plaintiffs in these cases.

2. General Dynamics' position was (a) that all claims against McDonnell Douglas and Turkish Airlines should be tried first, separating out all third-party claims, cross-claims, and counterclaims against General Dynamics; (b) that this first trial should be followed by the individual damage trials; and (c) that only thereafter should a trial be held against General Dynamics [just how and with which party or parties, and when, is not clear].

3. Turkish Airlines' position was to (a) separate its claims against McDonnell Douglas and General Dynamics for *products liability* (hull suit) and consolidate that claim for trial with the plaintiffs' claims in a trial for *products liability* against McDonnell Douglas and General Dynamics; and (b) later and separately try its loss of use on the theory of *products liability* and at the same time try the contribution and indemnity claims. Some of the plaintiffs agreed with this position. Since the settlement of Turkish Airlines' hull suit, its position on the other claims is not known, but is presumed to be the same.

4. The general position of two groups of plaintiffs was to separate and try the products liability claims against McDonnell Douglas and General Dynamics from all others and try them first.

5. The above position (#4) was also the position of counsel for the crew.

6. One group of plaintiffs wanted to separate and try the products liability claims *and* the negligence claims and the punitive damage claims of plaintiffs against McDonnell Douglas and General Dynamics first, and then all other issues which involve claims between defendants later.

7. *Kalinsky* (one case) agreed with the position of other plaintiffs stated in #6 above.

8. One group wanted to try the three main defendants (McDonnell Douglas, General Dynamics, and Turkish Airlines) together, severing the hull suit and all claims for contribution and indemnity.

9. The United States took no position officially, but agreed that separating products liability claims of plaintiffs against McDonnell Douglas and General Dynamics and trying them first would produce a speedier conclusion of all issues and claims.

Ordinarily it would be a comparatively simple thing to analyze the separate issues, claims, etc., of one or even a few consolidated suits; but with 205 suits, involving 337 deaths, each suit with cross-claims, counterclaims, and/or third-party complaints, some amended as many as three or four times, with over 1,100 claimants, and with an estimated 24 countries and 12 states involved, and where the plaintiffs' claims for relief sometimes contain as many as six different causes of action and the answers to the various pleadings in some cases carry as many as 20 separate defenses, it is unnecessary and an unwarranted bit of uselessness to recite all the issues, claims, cross-claims, third-party complaints, and special defenses in each of them for the following reasons:

1. All plaintiffs name both McDonnell Douglas and General Dynamics as defendants/on products liability (ex-

cept in 74–3638, which names only McDonnell Douglas);

2. All complaints have one claim or count for strict products liability (which does not require proof of negligence)[7] against McDonnell Douglas and General Dynamics, (except 74–3638) and another one for negligence, although sometimes they are poorly pleaded by intermingling and repetition; and some also name Turkish Airlines on products liability and on negligence;

3. Every case (except 74–3638) has either a third-party complaint or a cross-claim or counterclaim or separate affirmative defenses, and some have all four; and

4. The United States is named in some on negligence, but not products liability.

The best understanding will be had by taking one or two cases at random and examining the pleadings and issues raised, viz.:

The *Backhouse* case, No. 74–1993, is one. The defendants are McDonnell Douglas, General Dynamics, and Turkish Airlines. The second amended complaint, in the *first cause of action,* charges McDonnell Douglas and General Dynamics with *negligence* in the design, construction, etc., of the plane; the *second cause of action* charges the same two defendants with *strict products liability;* the *third cause of action* charges Turkish Airlines with *negligence* in the operation, maintenance, possession, and control of the aircraft and with breach of contract of carriage; and the *fourth cause of action* incorporates all the other three, seeking declaratory relief as to which of the three defendants may

be liable. The *fifth cause of action,* against McDonnell Douglas and General Dynamics, realleges negligence, strict tort liability, breach of warranty, willful misconduct, vicarious liability, breach of contract of carriage, and adds that defendants acted with fraud, oppression, and malice, rendering them liable for punitive and exemplary damages.

McDonnell Douglas filed an *answer* and *two cross-claims,* one with *six counts* against General Dynamics, and the other cross-claim with *four counts* against Turkish Airlines. General Dynamics filed an *answer,* setting up *22* separate defenses, and also a counterclaim against Douglas, setting up *six claims.* Turkish Airlines pleaded, setting up *two affirmative defenses* to the complaint; and in answer to the McDonnell Douglas cross-claim, set up *two affirmative defenses.* No third-party complaint is filed in this case as the claims of defendants among themselves are set up by cross-claims and counterclaims.

Another example is the *Flanagan* case, No. 74–808. Here the plaintiffs sued McDonnell Douglas, General Dynamics, and the United States as defendants. This complaint for a class action lists *five causes of action:* one for *products liability;* one for *negligence;* one for *declaratory relief;* one for *breach of warranty*; and one for *punitive damages,* against McDonnell Douglas and General Dynamics only.[8] Each of the defendants has filed an answer to the complaint and a crossclaim or counterclaim against the other defendants: General Dynamics, in addition to *seven counts in a cross-claim,* has set up *eight special defenses;* and

---

7. The seminal case establishing products liability is *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P. 2d 897 (1963). Such an action does not necessarily involve negligence. *Ault v. International Harvester Co.,* 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974). See also *Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57

(1969); *Barth v. B. F. Goodrich Co.,* 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968); *Dosier v. Wilcox & Crittendon,* 45 Cal.App. 3d 74, 119 Cal.Rptr. 135 (1975).

8. On June 9, 1975, a second amended complaint was filed, alleging essentially the same causes of action and again asking for a class action.

McDonnell Douglas has set up *two special affirmative defenses* in a cross-claim. The answer of the United States (which cannot be joined on products liability) has set up *10 defenses*. Thus, in addition to trying the case on the claim of *products liability,* the court and jury would be confronted in this case with two cross-claims and two counterclaims by defendants against each other which set up a total of *32 claims or cross-claims,* many of which involve contracts and course of business.

In other cases, as of May 25, 1975, there were: *80 third-party claims* filed against Turkish Airlines by McDonnell Douglas; *25 third-party claims* in other cases against General Dynamics; *232 cross-claims* by McDonnell Douglas against General Dynamics; *110 cross-claims* by McDonnell Douglas against Turkish Airlines; and *180 counter-claims* by General Dynamics against McDonnell Douglas. What becomes of these claims in the "settlement" between McDonnell Douglas, General Dynamics, and Turkish Airlines is not clear as that entire contract was not disclosed to the Court; but even if they were all dismissed, it would not change the result reached in this Memorandum.

In addition to the *205 complaints* filed, there are, in fact, as many as *600 third-party complaints or cross-claims and counter-claims* (a *total of over 800 pleadings*), many of which are going through an amending stage (some filed since the "settlement" agreement among defendants), adding claims and cross-claims to the pleadings already filed because of additional facts obtained on previous discovery. In many of the third-party claims and cross-claims and counter-claims examined, there are set up *contractual* exculpations, or inculpations, as well as claims on *warranties* and other rights, and claims by virtue of *implied or written contracts,* all of them long,

complicated, and in several parts. Various claims also plead "course of conduct" over a long period of mutual business relationships. One complaint has a cause of action founded on the California Consumers Legal Remedies Act of 1970. Several complaints and some of the cross-pleadings have counts for declaratory relief on liability.

*All of the third-party claims, cross-claims, etc., are concerned only with the defendants' liability, or lack of it, to each other and do not affect the liability of one or the other or all of the defendants to the relatives and other claimants of decedents in these cases, which decedents were doing nothing more than sitting in what they considered a safe airplane.*

In the early part of this year, the Court required all parties to file a list of the witnesses they proposed to depose *on the question of liability only* involved in the various claims, cross-claims, etc. The *combined list totaled 253:* 97 by Turkish Airlines, 77 by General Dynamics; 58 by McDonnell Douglas, 15 by the United States, and 6 by plaintiffs. Fifty-five of the 253 have been designated by two or more of the defendants.[9] What witnesses Turkish Airlines will want to depose on its remaining action is unknown, but elimination of all 97 designated by Turkish Airlines would leave 156 witnesses, which would take at least several years.

The mere statement of the foregoing number of issues, claims, third-party complaints, cross-claims, counterclaims, special defenses, and the number of witnesses, and the like, cannot help but lead to the conclusion that this, if ever, is a case in which the Federal Rules of Civil Procedure for separate trials of separate claims and issues should be used to the utmost on the issue of liability; and the contract filed *in camera*

---

9. As elsewhere indicated, the depositions of only 12 witnesses had been completed in 10 months, with two weeks on and one week off.

with the Court does not change that conclusion.

There is no general statutory provision governing separate trials, but the textual provisions of the applicable law are found in F.R.Civ.P. 13(i), 14(a), 20(b), 21, 42(b), and 57.[10] Of these, F.R.Civ.P. 42(b) is the most important. It reads as follows:

"Rule 42. *Consolidation; Separate Trials*

"(b) *Separate Trials.* The Court, *in furtherance of convenience*
or
*to avoid prejudice,*
or
*when separate trials will be conducive to expedition and economy,* may order a *separate trial* of *any claim,* cross-claim, counterclaim, or third-party claim, *or of any separate issue or* of *any number of claims,* cross-claims, counterclaims, third-party claims, *or issues,* always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States." ( Emphasis added.)

It is noted that these standards are in the *disjunctive* instead of the conjunctive.

F.R.Civ.P. 13(i), 14(a), 20(b), 21, and 57 also deal with other phases of separate trials, although the last clause of Rule 20(b) allows separate trials to avoid delay in addition to the grounds set forth in Rule 42(b). And Rule 21, in the last sentence, permits severance of claims, which the courts have said produces an appealable final judgment, which is not the case with Rule 42(b) on a separation of claims and issues only. *Lusk v. Pennzoil United, Ltd.,* 56 F.R.D. 645 (N.D.Miss.1972). And, as noted, many of the plaintiffs have stated separate causes of action for declaratory relief, which, under Rule 51, requires "a speedy hearing."

The most important rule of all is the last sentence of F.R.Civ.P. 1, which provides that the Federal Rules of Civil Procedure "*shall be construed to secure the just, speedy, and inexpensive determination of every action.*" It is this command that gives all the other rules life and meaning and timbre in the realist world of the trial court. It makes the rules useful tools for the trial of actual litigation instead of abstractions to be pontificated over in seminars by learned scholars of the law who have seen little or nothing of real litigation in the trial courts, where approximately 90 per cent of all civil litigation is handled *and* terminated.

---

10. "Rule 13. *Counterclaim and Cross-Claim*
"(i) Separate Trials; Separate Judgments. If the court orders separate trials as provided in Rule 42(b), judgment on a counterclaim or cross-claim may be rendered in accordance with the terms of Rule 54(b) when the court has jurisdiction so to do, even if the claims of the opposing party have been dismissed or otherwise disposed of."
"Rule 14. *Third-Party Practice*
"(a) *When Defendant May Bring in Third Party.* . . . Any party may move to strike the third-party claim, or for its severance or separate trial. . . . "
"Rule 20. *Permissive Joinder of Parties*
"(b) *Separate Trials.* The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials *or make other orders to prevent delay or prejudice.*" [Emphasis added.]
"Rule 21. *Misjoinder and Non-Joinder of Parties*
"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be served and proceeded with separately."
"Rule 57. *Declaratory Judgments*
" . . . The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

Justice Johnson said 151 years ago in his concurring opinion in *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed 23 (1824) at 229, "One-half of the doubts in life arise from the defects of language." But here, in Rules 1, 20, 21, and 42(b) of the Federal Rules of Civil Procedure, we find no defect of language. The language in each, and the last sentence of Rule 1, is simple, classical, precise, and comprehensive.

■ It is noted that the standards of *convenience, avoidance of prejudice,* and what will be *conducive to expedition and economy* are all in the *alternative.* Thus, they need not all be present for separation or severance, but the presence of any one of them is sufficient to sustain an order for a separate trial in the exercise of an informed discretion. See *United States v. International Business Machines Corp.,* 60 F.R.D. 654 (S.D.N.Y.1973).

■ It has been held that the kind of prejudice contemplated by Rule 42(b) does not come into play where the action is tried by the court. *United States v. International Business Machines Corporation, supra.* Conversely, in the cases now before us, there have been jury demands not only by plaintiffs, but also by the defendants. The earlier analysis of some of the pleadings and the history of the cases as set forth in the memorandum on damages of August 1, 1975, illustrates beyond peradventure the need for separating claims and issues to avoid confusion and prejudice in presenting the evidence to a jury.

Research of the cases and of every citation made by all of the parties in their various memoranda on this subject has been of little help because the undersigned finds no case close enough to this one to be authoritative. This case has been called by counsel the most difficult and complicated piece of litigation ever arising from an aircraft crash. I can readily agree with most, if not all, of the cited cases where no separation was allowed because there was no such complexity as exists here. This is not an *ordinary* lawsuit.

The following cases, and many more, while reaching results in factual and legal situations not in context here, are of little relevance except to affirm the wide discretion of the trial court in the exercise of its informed discretion: *Richmond v. Weiner,* 353 F.2d 41 (9th Cir. 1965); *Hayden v. Chalfant Press, Inc.,* 281 F.2d 543 (9th Cir. 1960); *Marks Food Corp. v. Barbara Ann Baking Co.,* 274 F.2d 934 (9th Cir. 1960); *Moss v. Associated Transport,* 344 F.2d 23 (6th Cir. 1965); *Bernardo v. Bethlehem Steel Co.,* 200 F.Supp. 534 (S.D. N.Y.1971), *aff'd,* 314 F.2d 604 (2 Cir.); *Lankford v. Ryder Truck Systems, Inc.,* 41 F.R.D. 430 (D.S.C.1967); *Kaminsky v. Abrams,* 41 F.R.D. 168 (S.D.N.Y. 1966); *Weitort v. A. H. Bull & Co.,* 192 F.Supp. 165 (E.D.Pa.1961); *Huffmaster v. United States,* 186 F.Supp. 120 (N.D.Cal.1960); *O'Donnell v. Watson Bros. Transportation Co.,* 183 F.Supp. 577 (N.D.Ill.1960); *Crockett v. Boysen,* 26 F.R.D. 148 (D.C.Minn.1960); *Larsen v. Powell,* 16 F.R.D. 322 (D.Colo. 1954); *Ross v. Service Lines, Inc.,* 31 F.Supp. 871 (E.D.Ill.1940).

The consensus is best summed up in Wright & Miller's *Federal Practice and Procedure:*

"The broad joinder provisions of Rules 13, 14 and 18 to 24 . . . place virtually no restrictions on joinder at the pleading stage. Rule 42(b) therefore is a counterbalance to the joinder rules by giving the court virtually unlimited freedom to try the *issues in whatever way trial convenience requires.* An exhaustive study of the practical operation of the rule concludes [emphasis added]:

"'on the whole the separate trial has proved a very flexible and useful instrument for preventing confusion, avoiding prejudice, and providing a convenient method of disposing of litigation as fairly and quickly as possible. The rule serves

its purpose in modern pleading.' " [Footnote omitted.] 39 Minn.L. Rev. 743, 762–763.

9 Wright & Miller, *Fed.Prac. & Proc.* § 2387 at 278.

"The provision for separate trials in Rule 42(b) is intended to further convenience, avoid delay and prejudice, and serve the ends of justice. It is the interest of efficient judicial administration that is to be controlling, rather than the wishes of the parties. The piecemeal trial of separate issues in a single suit is not to be the usual course. It should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule." [footnotes omitted.]

9 Wright & Miller, *Fed.Prac. & Proc.*, § 2388, at 279.

"A separate trial may . . . be ordered to avoid prejudice, as where evidence admissible only on a certain issue may prejudice a party in the minds of the *jury* on other issues." [Emphasis added.]

9 Wright & Miller, *Fed. Prac. & Proc.*, § 2388, at 281.

"Rule 42(b) *is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case."* [Emphasis added.]

9 Wright & Miller, *Fed.Prac. & Proc.*, § 2389, at 284.

The task now is to see how best the standards of Rule 42(b) and the imprimatur of Rule 1 can be carried out so as not to put a roadblock in the way of as timely a disposition as possible of all issues, claims, etc.

The separate trial of the consolidated plaintiffs' cases against McDonnell Douglas and General Dynamics on the claims and issue of products liability will not only meet the alternative requirements of 42(b) for a separate trial, but it will meet all of them. It will:

(1) be in furtherance of convenience, (2) avoid prejudice, and (3) be conducive to expedition and economy. This is principally so not only because of the simplicity and clarity of California's rule on products liability, but also because it would eliminate all the other issues between the plaintiffs and defendants and between all the defendants only, thus eliminating more than a year's time for discovery before any trial could begin while all parties defendant make discovery on their respective claims against each other. It would eliminate an extended trial of probably close to a year, during which plaintiffs' claims on products liability against McDonnell Douglas and General Dynamics, which are relatively simple and the trial thereof should be relatively short, would have to await the conclusion of the concurrent trial between defendants, wherein all defendants' third-party claims, cross-claims, counterclaims, etc., against each other would be heard, and whatever appellate court proceedings might develop. The third-party claims, cross-claims, and counterclaims, by whatever name, between defendants involve numerous issues besides products liability and negligence, which require ponderous, lengthy, involved written contracts to be put in evidence and proof of a course of action of the defendants with which none of the plaintiffs are concerned in their efforts to seek legal redress for the 337 deaths involved.

Moreover, McDonnell Douglas and General Dynamics, under the allegations of the complaints for products liability, cannot claim the shield of the Warsaw Convention, the Hague Protocol, and the Montreal Agreement; whereas, if Turkish Airlines were joined, either as a defendant or as plaintiff on the separate count of products liability in its complaint, I do not see how all the issues raised between the defendants can be avoided, including Turkish Airlines' claim of coverage and the legality of Warsaw, Hague, and Mon-

treal.[11] And joining Turkish Airlines would also raise the question as to this Court's power to determine coverage and legality of a non-signatory and non-adherent such as Turkey.

A separate trial, against McDonnell Douglas and General Dynamics only, would eliminate the issues of warranty to Turkish Airlines; assumption of risk by Turkish Airlines, or by decedents (which Turkish Airlines alleged); and the questions raised under the sales and service contracts between McDonnell Douglas and Turkish Airlines. It would eliminate the issue of negligence (see footnote 7). Inasmuch as all but a few of the plaintiffs and claimants in the within suits are aliens and Turkish Airlines is an alien, it would eliminate the jurisdictional constitutional question as to whether the alien claimants could sue the alien Turkish Airlines in these cases. *Hodgson & Thompson v. Bowerbank,* 9 U.S. (5 Cranch) 303, 3 L.Ed. 108 (1809). It must be kept in mind that the suit wherein Turkish Airlines submitted itself to jurisdiction by filing a complaint against McDonnell Douglas,[12] in action No. 74–1526, was consolidated with the within cases only for the purpose of discovery on liability.[13] Thus, any complaints in intervention against Turkish Airlines filed in that case (No. 74–1526) by any of the plaintiffs or claimants, or on their behalf, are not covered by this Order. Case No. 74–1526 still remains a separate lawsuit; and any order made in the within cases, except such as relate only to discovery on liability, does not apply to that case.

Nor would it be just and proper to proceed against the two defendants, McDonnell Douglas and General Dynam-

ics, on all claims and issues against them, or on any claim or issue other than that of products liability, as each manufacturing defendant would necessarily attempt to prove that the alleged negligence of Turkish Airlines, or the other manufacturing defendant, or the United States, was in fact the proximate cause of the crash, or that there was exculpation by contract of one or the other. Such procedure would needlessly bring into the trial not only the numerous and voluminous contracts between various of the parties, but also, almost assuredly, all the claims and issues presented in the third-party complaints, cross-claims, counterclaims, and special defenses involving jurisdictional, constitutional, and other complicated questions and issues, all of which would inordinately prolong the trials and present to the jury an immeasurable and wholly unwarranted picture of confusion. Most of the time would be required for the trial of the defendants' claims and counterclaims among themselves, forcing the heirs and claimants of those whom all parties concede are completely innocent, viz., the passengers, to wait out the trial, possible writs, and almost certain appeals before even starting their trials for damages.

The decedents bought a ticket, got on the plane, and were killed. Not only did they have nothing to do with the relationships between the defendants, but they had no way of finding them out or learning of any acts or efforts of defendants to correct or prevent defects in the plane or its parts, or not to do so.

From the foregoing, it is apparent that unless the claims of the plaintiffs on the issue of products liability are

---

11. There is a question as to whether or not this Court would have jurisdiction to determine the validity or applicability of Warsaw, Hague, and/or Montreal as to the foreign nations which signed or adhered to them and whose nationals were on the plane.

12. The complaint, as indicated elsewhere herein, has been amended to include both McDonnell Douglas and General Dynamics as defendants and now seeks only loss of use, miscellaneous damages, and punitive damages.

13. See orders of July 16, 1974, and August 5, 1974.

separated as to McDonnell Douglas and General Dynamics, a joint trial of all claims and issues or any trial other than on products liability would not only create *"prejudice"* to the plaintiffs, but also *cause* them *incomprehensible and unavoidable and wholly unnecessary inconvenience, delay, and costs.*

■ After an examination of all the briefs and the authorities cited in the cases and as many of the pleadings as it has been possible for the Court to read, and after hearing a week's argument, the Court has concluded that decision on the claims of the plaintiffs, including the claims of the crew, against the defendants McDonnell Douglas and General Dynamics on the issue of products liability alone would be in *furtherance of convenience, conducive to expedition and economy,* would avoid prejudice to any party, and is the best way to *"secure the just, speedy, and inexpensive determination"* of the whole cluster of controversies and lawsuits.

"The rights of the innocent injured party always do, and always should, remain paramount. To require such party to be subjected to all the costs and inconvenience of a trial extended by the introduction of additional parties who might also be liable is completely to lose sight of the basic reason the action is allowed and brought."

*Thornton v. Luce,* 209 Cal.App.2d 542 at 552, 26 Cal.Rptr. 393 at 399 (1962), *hearing den.* Cal.S.Ct., Jan. 8, 1963.

■ Every delay causes additional financial hardship to the passengers' survivors and favors the wrong-doing defendant or defendants who allegedly caused the 346 deaths. Common sense tells us that every day's delay by the defendants earns them hundreds of thousands of dollars even if the claims were calculated at simple interest. On the other hand, it is to be noted that interest on plaintiffs' judgments, if secured, is not allowed in federal courts except from date of judgment and not from date of death. 28 U.S.C. § 1961 and Appellate Rule 37.

It cannot be denied from what appears so far that the decedents are innocent of fault and, hence, at least one, or more, or all, of the defendants are to blame. As between 346 innocent decedents and the one or more wrongdoers who caused their death, who can doubt that the duty of the court lies in separating out those claims, issues, and parties which will bring the quickest relief to the surviving claimants of the dead?

The Court finds that trial of all issues, claims, cross-claims, third-party complaints, and counterclaims would create great inconvenience to the plaintiffs, as well as irreparable injustice, inasmuch as they are not allowed interest from the date of the accident, as above noted, but from the date of judgment. 28 U.S.C. § 1961 (Appellate Rule 37). It would cause irretrievable delay and gross expense to every litigant, especially those whose rights are entitled to first consideration, namely, the relatives and claimants of the decedents. It needs no argument to support that conclusion. Reading the record of claims, third-party claims, cross-claims, and counterclaims, and noting the number of cases and people involved, is sufficient.

McDonnell Douglas had claimed that under California Code of Civil Procedure § 875(a) separate trials of plaintiffs' claims against fewer than all defendants would irreparably prejudice any claim for contribution and indemnity against Turkish Airlines. But it appears from the settlement between defendants announced in open court that McDonnell Douglas, General Dynamics, and the other defendants have settled their dispute among themselves as far as plaintiffs are concerned, and that issue is moot and will be out of the case. Moreover, should McDonnell Douglas or General Dynamics seek to claim contribution or indemnity from anyone, the

principles announced in *Kohr v. Allegheny Airlines, Inc.*, 504 F.2d 400 (7th Cir. 1974), *cert. denied sub nom. Forth Corp. v. Allegheny Airlines, Inc.*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975), would apply over any contrary provisions in California state law.

Article III, Section 2, of the Constitution and the United States Code, Title 28, Section 1332(a)(2), permit foreigners to sue in the United States courts. *The Sapphire*, 78 U.S. (11 Wall) 164, 20 L.Ed. 127 (1870), and numerous cases since then. These cases are properly filed against McDonnell Douglas and General Dynamics, and the Court has undoubted jurisdiction of them and the claims of damages for products liability. Who would call it due process to compel more than 1,100 heirs and survivors of 337 innocent passengers killed in one horrible instant to wait out their claims until the giant corporations who are the defendants, and their insurers, settled in this and the appellate courts their respective rights and liabilities among themselves? *The defendants, unlike most of the plaintiffs, have not lost their source of income and do not stand helpless in that respect, such as the heirs and claimants did and still do on and after March 3, 1974, as the result of the acts of one or more of the defendants. The equities are all with the plaintiffs, and the speedy determination of their rights should be, and is, the prime consideration of this Court.*

The original statement that an oral agreement had been made among the defendants as to sharing liability was made in open court on May 27, 1975; and at defendants' request, discovery was halted and the matters were continued to June 16, 1975, and then to July 8, 1975 (six weeks after the May 27 announcement), at which time the written agreement, dated that day, was signed and the matter was continued to August 25, and then to October 6, 1975.

At all times when settlement was discussed in court, the Court stated that the procedure to be followed was to secure and file a petition for settlement, verified by plaintiffs and defendants, with the lawyers for all sides certifying it was reasonable, and that thereupon, and not otherwise, would an order be made approving the settlement and dismissing the case. No objection was or has been made to that procedure.

But until now—a few days short of six months after the May 27, 1975, announcement—not one settlement document for a single one of the 1,100 claimants of the 337 decedents has been presented to this Court. The plaintiffs have been precluded from making further discovery by the stay thereof issued at defendants' request. In other words, it took the defendants six weeks to complete in writing the settlement agreement among themselves; but in six months, the settlement of *not one plaintiff's case* has been completed.

ACCORDINGLY, IT IS HEREBY ORDERED in all the cases, the case numbers of which appear in the title hereof:

(1) That the claims and the issue of products liability brought by the plaintiffs against the defendants McDonnell Douglas and General Dynamics be, and they hereby are, separated from all other claims and issues in said cases regardless of how or by whom such claims and issues are raised;

(2) That the said claims and issue of products liability be consolidated in said numbered cases for further discovery on, and the trial of, products liability only;

(3) That all discovery on liability, until further order of Court, be confined to the claims and issue of products liability as to McDonnell Douglas and General Dynamics only;

(4) That nothing contained in this Order shall preclude discovery on the issue of punitive damages, limited insofar as the ability to pay of either McDonnell Douglas or General Dynamics is concerned to such financial statements and similar data of which ju-

dicial notice may be taken. Such limitation is not intended to in any way limit discovery as to conduct of either or both of defendants McDonnell Douglas or General Dynamics related to the issue of products liability within the scope of F.R.Civ.P. 26, or to insurance coverage.

(5) That the plaintiffs and McDonnell Douglas and General Dynamics shall on the 15th day of December, 1975, resume deposition discovery from the time when it was stayed on May 29, 1975, limiting discovery to the claims and issue as hereinbefore outlined in this Memorandum, with one week off after each continuous three weeks of depositions;

(6) That the plaintiffs and McDonnell Douglas and General Dynamics shall appear on the 5th day of January, 1976, at 2:00 P.M. and at that time:

    (a) Report progress;

    (b) Submit a revised list of proposed deponents, if any, with a statement of the subject matter of each witness's testimony; and

    (c) Submit proposed written interrogatories and requests for admissions, designating to whom addressed, limited to the claims and issues as outlined hereinbefore in this Memorandum; *

(7) That the plaintiffs and McDonnell Douglas and General Dynamics be prepared on that date to fix a pretrial date and a tentative trial date on the claims and issues of products liability;

(8) That nothing herein contained shall prevent individual settlement of plaintiffs' claims under the procedure heretofore authorized;

---

* If it is necessary to have more than one deposition going on at one time to complete the discovery, the Plaintiffs' Committee should have no difficulty providing counsel; nor should there be any difficulty on behalf of the defendants, either McDonnell Douglas or General Dynamics, who from time to time through-

(9) That this Order shall fully apply, there being no reason why it should not, to Case No. 74–3638, in which the plaintiff sued only McDonnell Douglas and has not joined General Dynamics at any time; and

(10) That nothing herein contained prevents, or is intended to prevent, any plaintiff from waiving punitive (exemplary) damages and, upon consent of either of said defendants, McDonnell Douglas or General Dynamics, proceeding to trial on the sole issue of compensatory damages, as that term is explained in the opinion of this Court on the applicable law of damages, filed herein on August 1, 1975, D.C., 399 F. Supp. 732.

out these proceedings have had several different large law firms, with many members in each one, which can provide representation for McDonnell Douglas or General Dynamics at any depositions and can prepare proposed interrogatories or requests for admissions, if any.