CALHOUN *v.* McCRORY PIANO & REALTY CO.*

(*Jackson.* April Term, 1914.)

**PRINCIPAL AND AGENT.** Unauthorized execution of note by agent. Liability of principal.

Where an agent, with authority to make sales and collect the price, but without authority to borrow money, was a defaulter, and then borrowed money and executed a note therefor in his principal's name, and remitted out of the loan a sum less than the amount of the defalcation, the principal, receiving the remittance as one on sales, was not liable on the note, under the equitable doctrine that, where a principal obtains the benefit of a loan procured by his agent acting without authority, he ratifies the same and makes himself liable to the lender. (*Post,* *pp.* 651-655.)

Cases cited and approved: Bannatyne v. McIver, 1 K. B., 103; Alton Mfg. Co. v. Garrett Bibical Institute, 243 Ill., 298; Mc-Adow v. Black, 4 Mont., 475; Mundorff v. Wickersham, 63 Pa., 87.

Cases cited and distinguished: Blackburn Bldg. Soc. v. Cunliffe, 22 Ch. D., 6172; Reversion Fund, etc., v. Maison Cosway, Ann. Cases, 1913, 1106.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals and by writ of *certiorari* from the Court of Civil Appeals to the Supreme Court. —F. H. HEISKELL, Chancellor.

---

*On the question of the liability of a principal on negotiable paper executed by an agent, see note in 21 L. R. A. (N. S.), 1046.

As to what will constitute an implied ratification of an unauthorized loan effected by an agent, see note in 6 L. R. A. (N. S.), 311.

SWEENEY & SWEENEY, for plaintiff.

G. J. McSPADDEN, for defendant.

MR. JUSTICE LANDSDEN delivered the opinion of the Court.

One Brown was an agent of the piano company, without authority to borrow money, but with authority to make sales of pianos and collect the purchase price of the pianos sold. He defaulted in his remittances for the sales of pianos, and to make good his defalcation borrowed $360 from Miss Banks and executed a note therefor, signed "The McCrory Piano & Realty Company, M. R. Brown, Mgr." After the maturity of the note, Miss Banks sold and indorsed it to Calhoun. Calhoun filed this bill against the piano company to recover the amount. The piano company did not know that Brown had borrowed the money, nor did it know that any part thereof had been received by it until after Brown absconded and left its service. Brown deposited the money received from Miss Banks in a bank to his own credit, and remitted $300 of the amount to the piano company by his own check, which the piano company credited to Brown's account.

The chancellor and the court of civil appeals held that the piano company is not liable to Calhoun upon the note. We denied a petition for writ of *certiorari* at a former day, and the case is now before us upon petition to rehear. It is earnestly insisted by the petitioner that the piano company is liable, because it re-

ceived the benefit of the loan, and it is said that the actual money received from Miss Banks has been traced into the hands of the piano company. *Bannatyne* v. *McIver,* cited in the Court of Appeal of England, 1 K. B. 103, 3 Ann. Cases, 1143, is relied upon as authority to sustain the complainant's claim.

If liability against the piano company can be sustained at all, it must be upon some equitable principle. There is no liability at law, because Brown was without authority to borrow the money, and the defendant has not ratified his transaction.

*Bannatyne's Case* is based upon the judgment of Lord Selborne in *Blackburne Bldg. Soc.* v. *Cunliffe,* 22 Ch. D., 6172. In his judgment in that case, Lord Selborne thought that the equity allowed there was consistent with the general rule of law that persons "who have no borrowing powers cannot, by borrowing, contract debts to the lenders." He thought the principle of law stated and the equity enforced there could be harmonized upon the principle that, if the one without power to borrow should use the money to discharge liabilities of his principal, the amount of the principal's liabilities would not be changed, and therefore there was no substantial borrowing in the result, so far as the position of the principal was concerned. In substance, this is undoubtedly true, and in such a case the principal, who receives the benefit of the money borrowed, is liable to the lender. In *Bannatyne's Case* it appeared that the lender did not know of the want of authority in the agent to borrow money. In the

later case of *Reversion Fund, etc.,* v. *Maison Cosway,*
Ann. Cases, 1913, p. 1106, it appeared that the lender
knew that the agent was without power to borrow, but
the sums borrowed were used to discharge outstanding
liabilities of the principal, and the rule laid down by
Lord Selborne was applied as in *Bannatyne's Case.*
The underlying equity in those cases is that the princi-
pal has received the benefit of the borrowed money in
such way as not to enlarge his liability. But such is
not this case. The agent here borrowed the sum in con-
troversy to discharge in part his own defalcation with
his principal. If the principal should be required to
pay the note in suit, its liabilities would be increased
in precisely the amount of the judgment.

It is a well-settled doctrine of equity that, where a
principal obtains the benefit of a loan procured by his
agent acting without authority, he thereby ratifies the
unauthorized contract, and makes himself liable to the
lender for the sum received. This is in fact a state-
ment in another form of the doctrine announced by
Lord Selborne, supra. The principal, however, can-
not be said to have received the benefit of an unauthor-
ized loan, unless the sum borrowed is used to increase
his money in hand, or which he is entitled to receive
from the agent, or unless it is used to extinguish out-
standing liabilities against him.

In this case Brown was due the piano company a
larger sum than that which he remitted to it out of the
loan procured from Miss Banks. The piano company
received this remittance from Brown in such manner

that, as between them, it was a remittance upon sales of pianos, and therefore was the company's money. Its liabilities were not decreased, and its money in hand was not increased. Therefore the mere act of retaining the sum remitted to it by Brown is not a ratification in equity of the unauthorized transaction.

Cases illustrating the general subject: *Alton Mfg. Co.* v. *Garrett Biblical Institute,* 243 Ill., 298, 90 N. E. 704; *McAdow* v. *Black,* 4 Mont., 475, 1 Pac. 751; *Mundorff* v. *Wickersham* 63 Pa., 87, 3 Am. Rep. 531.