**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Plaintiff–Appellant,

v.

**TENNESSEANS FOR TYREE, et al., Defendants,**

**Randy Tyree and P. Douglas Morrison,**
Defendants–Appellees.

No. 88–6249.

United States Court of Appeals,
Sixth Circuit.

Argued July 27, 1989.

Decided Sept. 21, 1989.

Rex R. Veal, Anne C. Sanders argued, Federal Deposit Ins. Corp., Knoxville, Tenn., for plaintiff-appellant.

W. Keith McCord argued, McCord, Cockrill & Weaver, Knoxville, Tenn., for defendants.

Before KENNEDY and KRUPANSKY, Circuit Judges; and MILES, District Judge.*

KENNEDY, Circuit Judge.

Plaintiff FDIC appeals from a lower court judgment absolving defendants Randy Tyree and P. Douglas Morrison of personal liability on a promissory note in the principal amount of $378,750.00 issued by the United American Bank of Hamilton County, Tennessee (UAB–HC) and executed by Morrison with the words "Tennesseans for Tyree by P. Douglas Morrison, Chairman." Plaintiff claims defendants are personally liable on the note under Tennessee law of agency and because, in executing the note, they engaged in conduct likely to mislead banking authorities in violation of D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C. § 1823(e). We find that the lower court's findings of fact were not clearly erroneous and that it applied the correct rule of law and affirm.

Pursuant to the Tennessee Campaign Finance Act. T.C.A. § 2–10–101 et seq., Tennessee gubernatorial candidate Randy Tyree appointed a campaign committee known as "Tennesseans for Tyree." Tennesseans for Tyree was an unincorporated nonprofit political organization which, among other functions, raised funds for Tyree's 1982 campaign. As required by the statute, notice of the committee's formation was filed with the Tennessee State Librarian & Archivist in October 1981. According to appellees, the Tennesseans for Tyree campaign committee consisted of an association of 25–30 members led by Jake Butcher, C.H. Butcher, Jr. and Jesse Barr. These same persons had for several years raised funds for various political campaigns.

Defendant Morrison acted as Tyree's campaign coordinator. Loans to fund the campaign were arranged by Jake Butcher, C.H. Butcher, Jr. and Jesse Barr. The UAB–HC loaned the committee $378,-750.00, as evidenced by a demand promissory note dated September 20, 1982. The note was executed with the words "Tennesseans for Tyree by P. Douglas Morrison, Chairman." The amount was blank at the time Morrison signed. Barr later filled in the amount. The funds were used by the treasurer of Tennesseans for Tyree to cover overdrafts in a bank account at another bank that was used to pay campaign expenses. Morrison executed the note in this manner at the direction of Barr, who was an authorized agent of UAB–HC. Barr assured Morrison orally that Morrison would incur no personal liability on the note.

After UAB–HC failed, plaintiff FDIC obtained the note from the bank through a purchase and assumption transaction under 12 U.S.C. § 1821. In an earlier proceeding, FDIC received a summary judgment against George and Justine Dukas as guarantors of the note. On August 1, 1988, FDIC brought the instant action against defendants Tennesseans for Tyree, Randy Tyree, and P. Douglas Morrison. FDIC claimed that Tyree and Morrison were personally liable on the note based on Tennessee's law of agency. FDIC also argued that because Morrison executed the note in blank and on behalf of an allegedly nonexistent principal (i.e., Tennesseans for Tyree), defendants had participated in a scheme or secret agreement likely to mislead banking authorities in violation of 12 U.S.C. § 1823(e). The lower court, which tried the case without a jury, found Tennesseans for Tyree liable on the note, but held that Tyree and Morrison were not personally liable, nor had they engaged in any activity to deceive banking authorities. FDIC appeals from that judgment.

A. *Liability under Tennessee law*

FDIC argues that Tyree and Morrison are personally liable on the note under Tennessee law. FDIC's first claim is that Ten-

---

* The Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation.

nesseans for Tyree did not exist when Morrison executed the note and, therefore, Morrison is personally liable because he signed the note on behalf of a nonexistent entity. *See generally*, Am.Jur.2D *Agency* § 295; 10 C.J.S. *Bills & Notes* § 32(b)(3). FDIC argues alternatively that Morrison signed the note without authority. Both of these arguments, however, are contingent on FDIC's factual assertion that Tennesseans for Tyree did not exist when Morrison executed the note. With respect to factual questions, this Court must uphold the District Court's findings of fact unless they are "clearly erroneous." *Sawyer v. Arum*, 690 F.2d 590, 592 (6th Cir.1982); *see also Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 616 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987) (district court's interpretation of facts is to be adopted where multiple interpretations may exist); *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 318 (1986) (district court's fact findings are upheld if supported by record as whole, regardless of whether it is best or only conclusion).

█ FDIC argues that the District Court's finding that "Tennesseans for Tyree was properly organized as a political campaign committee … duly registered … [and] … complying with all the requirements of state law …" is clearly erroneous. It contends that based on the inconsistent deposition testimony of defendants, the court was required to find that there were two entities, a registered political organization and a sham organization, existing in name only and used to obtain funding. Both defendants at times sought to distinguish between two Tennesseans for Tyree entities—one as an umbrella political campaign organization and one as a subsidiary fund-raising organization. It was the latter organization that FDIC contends was obligated on the note and which did not exist, "except in name."

The District Court examined the appellees' entire testimony and concluded that there was but one Tennesseans for Tyree and that it existed when Morrison executed the note. This finding was not, as FDIC contends, clearly erroneous. Although appellant FDIC identifies several inconsistencies in appellees' testimony,[1] adequate evidence existed to support the District Court's factual conclusion that there was only one Tennesseans for Tyree, and that organization existed when Morrison executed the note. On appeal, FDIC has the burden of establishing that the lower court made a mistake, *Thompson v. National Railroad Passenger Corp.*, 621 F.2d 814 (6th Cir.), *cert. denied*, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980) and that burden is not met by merely pointing out conflicting testimony. *Sawyer*, 690 F.2d at 592 (citing *Walling v. General Industries Co.*, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947)). Appellant does not appear to contend that there was no evidence to support the court's finding. The District Court's finding that there was only one Tennesseans for Tyree and that it existed when Morrison executed the note need not be disturbed merely because it is based on conflicting evidence. The District Court adequately explained why it accepted the testimony it did.

█ FDIC's argument that Morrison signed the note without authority because he was not the chairman of Tennesseans for Tyree is equally without merit. The District Court's factual finding that Morrison was chairman of Tennesseans for Tyree was not clearly erroneous. Although his duties in that capacity appear limited to

---

1. According to the District Court, the inconsistencies in the record stem from appellees' assumption earlier in the proceedings that if they associated themselves with the organization that received campaign funds, they would be personally liable. They, therefore, attempted in their testimony to disassociate themselves from Tennesseans for Tyree and Jake Butcher, C.H. Butcher, Jr. and Jesse Barr. Despite this confu-

sion, the court concluded that there was only one Tennesseans for Tyree, that it was duly registered, and that it was obligated on the note. In making their claim that there were two Tennesseans for Tyree, FDIC relies exclusively on these inconsistent statements. However, as the District Court concluded based on the documentary evidence in the case, there was only one Tennesseans for Tyree.

signing notes, adequate evidence exists to show that he acted as chairman of Tennesseans for Tyree at least for purposes of obtaining funding. The fact that there was also testimony to the contrary does not establish that the decision was clearly erroneous. *See Sawyer,* 690 F.2d at 592.

■ Morrison's signature as a representative of Tennesseans for Tyree insulates him from liability on the note. FDIC concedes that "under the law of Tennessee, use of the word 'by' preceding a signature is legally sufficient to establish that the signature is made in a representative capacity when the principal is fully disclosed." *FDIC v. Tennessee Wildcat Services, Inc.,* 839 F.2d 251, 253 (6th Cir.1988). FDIC claims the *Tennessee Wildcat* rule is inapplicable to this case because here there was in fact no principal for Morrison to sign on behalf of or disclose. This argument fails in view of the court's finding that Tennesseans for Tyree in fact did exist when Morrison executed the note. Under T.C.A. § 47–3–403 (UCC Article 3), an instrument executed by an agent in a representative capacity obligates the principal and not the agent if the agent signs in a representative capacity on behalf of a disclosed principal. *Tennessee Wildcat Services,* 839 F.2d at 253. Morrison executed the note in his representative capacity as chairman of Tennesseans for Tyree, an existing and fully disclosed principal. He is thus insulated from liability on the note. Tyree is similarly free from liability on the note because under Tennessee law, no one is liable on an instrument unless his signature appears on it. T.C.A. § 47–3–401. Since Tyree did not sign the note, he cannot be held personally liable on it.

■ FDIC next claims that Tyree and Morrison are personally liable on the note as members of Tennesseans for Tyree because they were partners in that organization. Under Tennessee law, however, members of nonprofit political organizations are not treated as partners for purposes of liability. Rather, they are governed by the law of agency. *Blair v. Southern Clay Mfg. Co.,* 173 Tenn. 571, 121 S.W.2d 570, 572 (1938) ("If … in the operation of … an association, profit and loss is not contemplated, such as literary, social or political organizations, its members are not treated as partners and their liability for debts contracted in behalf of the association is determined upon principles of agency."). The District Court found that Tennesseans for Tyree was an unincorporated nonprofit political organization. Under Tennessee agency law, members of a nonprofit association are not liable for the debts of the association unless they agree to be personally liable or ratify the association's debt. *FDIC v. Tyree,* 698 S.W.2d 353, 355 (Tenn.App.), *perm. to appeal denied,* (Tenn.1985).

■ The lower court found that neither Tyree nor Morrison agreed to be personally liable on the note and that the evidence did not show that either of them ratified the debt of the association. These factual findings are supported by the record and are not clearly erroneous. In addition, the fact that Morrison signed as a representative of Tennesseans for Tyree and the note was secured by independent guarantors supports the District Court's conclusion that neither Morrison nor Tyree agreed to assume the association's debt.

■ Moreover, Morrison and Tyree did not ratify the debt. Under Tennessee law, ratification occurs where "a principal obtains the benefit of a loan procured by an agent acting without authority.…" *FDIC v. Tyree,* 698 S.W.2d at 355. To establish liability, the principal must receive the benefit of the loan and it must be used to "'increase his money in hand … or … to extinguish outstanding liabilities against him.'" *Id.* (quoting *Calhoun v. Realty Co.,* 129 Tenn. 651, 168 S.W. 149 (1914)). FDIC argues that Tyree received the benefit of the loan in his campaign and therefore ratified the debt. However, Tyree was not the principal obligated on the note. The principal was Tennesseans for Tyree, not Tyree himself. The note paid for the committee's campaign debts. It did not increase money in his hand personally, nor did it extinguish any of his personal liabilities. Thus, there was no ratification of the debt.

FDIC lastly argues that under *Rich Printing Co. v. Estate of Kenneth Doug-*

*las McKellar*, 46 Tenn.App. 444, 330 S.W.2d 361 (1959), when a campaign committee operates outside the established political organization, partnership law, not the law of agency, applies and individual liability is imposed on members of the committee. As appellees point out, however, *McKellar* was limited to holding political campaign committee members liable as partners for their involvement in a primary, as opposed to a general, election. Although generally members of political organizations are governed by the law of agency, the *McKellar* court could not "agree that candidates ... in an election which must decide the nominee for that political party to be elected by a subsequent general election can be put in the same class with 'associations and clubs organized for objects which are social or political.'" *Id.* at 483, 330 S.W.2d at 378. *McKellar* is inapplicable to the present case, which involved a general election. Thus, the case is controlled by general agency principles, rather than the law of partnership. In addition, this case involves liability on an instrument which is controlled by T.C.A. §§ 47-3-401 & 47-3-403 (the UCC), as opposed to *McKellar*, which involved liability on an open account. As discussed above, neither Morrison nor Tyree are personally liable under the UCC.

### B. Liability under 12 U.S.C. § 1823(e) and D'Oench, Duhme & Co. v. FDIC

FDIC claims that appellees engaged in a scheme to mislead banking authorities in violation of 12 U.S.C. § 1823(e) and *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and therefore should be held personally liable on the note. *D'Oench* and section 1823(e) preclude defenses against the FDIC that are based on unwritten agreements between parties which would otherwise defeat the FDIC's right in bank assets under a purchase and assumption transaction. This allows the FDIC to rely on bank records to assess the worth and collectibility of a bank's assets and to insulate itself from secret agreements or defenses that do not appear on the face of banking instruments. *FDIC v. Powers*, 576 F.Supp. 1167, 1171 (N.D.Ill.1983), *aff'd without opinion*,

753 F.2d 1076 (7th Cir.1984). FDIC seeks to expand application of section 1823(e) and *D'Oench* to *impose* liability on the parties of a secret agreement, as opposed to the rules' normal application of *preventing* such parties from using private agreements as a defense against the FDIC. The District Court correctly refused to apply section 1823(e) and *D'Oench* in the manner urged by appellants.

FDIC claims that Morrison's execution of the note in blank, on behalf of a fictitious principal, and under a secret agreement that he would not be personally liable was a deceptive scheme subjecting him to personal liability. It should be noted initially that neither section 1823(e) nor *D'Oench* and its progeny has ever been interpreted to actively impose liability on parties to a deceptive scheme. They have only been applied to prevent parties from using undisclosed defenses and agreements to defeat the rights of the FDIC in purchase and assumption transactions. However, even if section 1823(e) and *D'Oench* did hold parties liable for deceptive practices, the facts, as found by the District Court, do not reveal deception by appellees. First, the principal that Morrison obligated on the note (Tennesseans for Tyree) in his representative capacity was not fictitious, as discussed above. Second, execution of the note in blank is not *per se* a deceptive practice prohibited by section 1823(e) or *D'Oench*. Although FDIC cites several cases for the proposition that execution of a note in blank is a deceptive scheme which cannot be used as a defense against the FDIC, those cases are distinguishable from the present one. Those cases all involved a situation where either the note was executed in blank and later filled in for an amount *greater* than that agreed to by the party executing it, or the note was not executed by a person signing in a representative capacity. When the FDIC asserted its right to the full amount, section 1823(e) and *D'Oench* prevented the duped makers from asserting the defense that they executed in blank with the understanding that the amount would be less than the amount actually filled in. Moreover, some of these cases involved the liability of makers signing on their own be-

half, rather than in a representative capacity. The defendants in those cases could not rely on private agreements with banking officials that they would not be personally liable because such limitation did not appear on the face of the note. In this case, however, UAB filled in an amount no greater than Morrison agreed to, and Morrison clearly appeared an agent on the face of the note. Thus, there was no deceptive activity which would mislead bank authorities.

Similarly, FDIC's argument that there was a secret agreement between Morrison, Tyree, and the bank that Morrison and Tyree would not be personally liable is without merit. The face of the note reveals that Morrison signed in a purely representative capacity, evidencing that he would not be personally liable. T.C.A. § 47–3–403. FDIC's argument that Morrison, Tyree, and the bank "secretly" agreed that he would not be liable is therefore irrelevant, since Morrison is not using that agreement as a defense. Rather, he is defending based on the face of the note, his signature as agent. The note and the agreement were the same. The lower court correctly refused to apply section 1823(e) and *D'Oench* to this case.

For the foregoing reasons, the judgment of the lower court is AFFIRMED.