VICTORY COMMITTEE, et al.,
Appellants–Defendants
Below,

v.

GENESIS CONVENTION CENTER, OF
the CITY OF GARY, Appellee–
Plaintiff Below.

No. 45A03–9202–CV–53.

Court of Appeals of Indiana,
Third District.

Aug. 17, 1992.
Rehearing Denied Oct. 2, 1992.

Douglas M. Grimes, Gary, for appellants.

William E. Davis, Trueblood & Davis, Gary, for appellee.

STATON, Judge.

The Victory Committee, treasurer Virginia Velez and then-mayoral candidate Richard Hatcher (collectively, the "Committee") appeal the trial court grant of summary judgment in favor of the plaintiff, Genesis Convention Center (Genesis), in a breach of contract action. The Committee raises two contentions in support of its claim that summary judgment was improperly granted in this case. We consolidate and restate these contentions as the following issue for review:

> Whether genuine issues of material fact exist as to whether ex officio committee members are personally liable for the debts of the Committee, a not-for-profit unincorporated association.

We affirm.

The Committee is an organization formed to support Hatcher's campaign for re-election as mayor of Gary, Indiana. To that end, the Committee contracted with Genesis to rent its convention center for a fund-raising dinner to be held on October 24, 1987. Velez signed the contract in her capacity as treasurer of the Committee. Genesis performed its obligations under the contract to lease the reception hall in the convention center and to provide catering services. The bill for these services amounted to $16,125.00. The Committee paid only $2000.00 on the contract, and Genesis sued for the balance.

After the parties filed cross-motions for summary judgment, the trial court found in favor of Genesis. In so doing, the court made the following conclusions:

2. The Victory Committee was duly organized under I.C. 3–9–1–1, et seq.

3. That Defendant Hatcher became an ex-officio member of said Victory Committee by operation of law.

4. By virtue of her appointment as treasurer of the Victory Committee, Defendant Velez, by operation of law, became an ex-officio member of the Victory Committee.

5. By virtue of being members of the Committee, Defendants Hatcher and Velez are jointly and severally liable for the judgment debts of the Defendant Committee.

6. There being no material issue of fact, [Genesis] is entitled to summary judgment, and Defendants' motion for summary judgment should be denied.

Record, p. 10.

The trial court concluded the order with a judgment for Genesis in the amount of $14,041.85. It is from this order that the Committee now appeals, claiming that summary judgment was inappropriate under the circumstances of this case.

■■■■ On an appeal from the grant of summary judgment, we apply the same standard applicable in the trial court. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562. We must determine whether the record reveals a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Rational assertions of fact and reasonable inferences therefrom are deemed to be true, and any doubt as to a fact or an inference to be drawn from it is resolved in favor of the opponent to summary judgment. *Malachowski, supra.* Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors, Inc.* (1989), Ind. App., 538 N.E.2d 275, 276, *trans. denied.*

The Committee argues that a genuine issue of material fact remains on the issue of whether Hatcher and Velez can be held personally liable for the debts of the Committee. Genesis contends that the undisputed facts establish, as a matter of law, the liability of ex officio members Hatcher and Velez for the Committee's debts. This argument actually presents two questions: Are Hatcher and Velez members of the Committee, and if so, as members of the unincorporated association, are they personally liable for the debts of the association?

We may answer the first question, with little discussion, in the affirmative. State law unequivocally defines the status of Hatcher and Velez as members of the Committee. Under the election laws of this state, "A candidate is an ex officio member of the candidate's committee." IND.CODE 3–9–1–8 (1988). Moreover, according to statute, "Each committee must have a chairman and a treasurer who are ex officio members of the committee." IC 3–9–1–2.[1] Therefore, Hatcher and Velez, as candidate and treasurer, respectively, are members of the Committee.

■■■■ Turning to the second question, the common law is well settled that a member of an association which does not conduct business for profit becomes liable for "obligations incurred in behalf of the association within the scope of the authority of the agent attempting to create the liabili-

---

**1.** "ex officio" means "by virtue of the office." *Black's Law Dictionary* 661 (4th ed. 1968).

ty." 2 S. Williston, *A Treatise on the Law of Contracts* § 308, p. 449 (3d ed. 1969) [hereinafter *Williston on Contracts*].[2] As Professor Williston explained:

> Insofar as the obligation was created in a manner authorized by articles of agreement or by-laws, the individual members are liable, presumably jointly, beyond that each one is liable only so far as he has personally assented to the transaction in question. Unless bound by their implied agreement when they joined an association, members are not liable for obligations unauthorized by them, though authorized by the majority of their fellow members.

*Id.* at pp. 450–51 (footnotes omitted). *See also* 6 Am.Jur.2d *Associations & Clubs* § 46, p. 478 (1963), and cases cited therein (members of voluntary association not organized for profit "are jointly and severally liable as principals on contracts made by, for, or in the name of, the association for the purpose of promoting its objects, to which they have given either assent or subsequent ratification").

Although there is little Indiana case law on the subject, other states have uniformly applied the common law. For example, in *Will v. View Place Civic Association* (1989), 61 Ohio Misc.2d 476, 580 N.E.2d 87, members of the defendant civic association sued the association, alleging that two of its officers improperly entered into an agreement with a construction company to remove soil from nearby real estate that a majority of members intended for use as a nature preserve. Although finding the contract valid, the court concluded that the individual members did not intend to be bound by its terms, as manifested by their actions of writing letters opposing the agreement, by renouncing their membership in the association, and by seeking legal assistance to rescind the contract. *Id.*

Similarly, in *Jim Host & Associates, Inc. v. Sharpe* (1982), Ky.App., 639 S.W.2d 784, the Court of Appeals of Kentucky applied the common law rule to hold members of an unincorporated association organized

for political purposes liable for the association's indebtedness because the members authorized the transactions out of which the debt arose. The members comprised a steering committee that contracted with a public relations firm to perform services furthering the position of the association in an upcoming referendum. The firm performed its services but did not receive payment. The trial court dismissed the lawsuit against the association and its members, but the appellate court reversed, noting that the individual members were "the very ones who negotiated with the appellant and authorized the services to be performed." *Id.* at 785. Therefore, the court held, it was error to dismiss the complaint against these individuals. *Accord Leslie v. Bendl* (1988), 92 Or.App. 519, 759 P.2d 301, *rev. denied; Federal Deposit Insurance Corp. v. Tyree* (1985), Tenn.App., 698 S.W.2d 353, *app. denied* (members of political committee are liable on contracts made by, for or in the name of the association when the members assent to or ratify the contract); *Shortlidge v. Gutoski* (1984), 125 N.H. 510, 484 A.2d 1083.

We believe this state follows the common law rule. Accordingly, members of a not-for-profit unincorporated association are liable for the obligations incurred by the association under a contract if the members authorize the contract or subsequently ratify its terms. The question we now turn to is whether a genuine issue of material fact exists as to whether Hatcher or Velez authorized or ratified the contract with Genesis.

In opposition to Genesis' motion for summary judgment, Hatcher and Velez executed affidavits denying personal liability for the debts of the Committee. Hatcher's affidavit stated, *inter alia:*

> 2. I have never entered into a Lease Agreement with the Genesis Convention Center.
>
> 3. At no time have I entered into an agreement to be personally liable to the

---

**2.** Associations that conduct business for profit are treated as partnerships, and members of such associations are liable as partners. *See id.* § 306–07.

Genesis Convention Center for any obligation(s), monetary or otherwise.

\* \* \* \* \* \*

6. At no time have I agreed to be jointly, severally or individually liable, along with Virginia Velez and the Victory Committee to pay any obligation(s) alleged to have been incurred by the Victory Committee.

Record, pp. 154–55.

In her affidavit, Velez stated:

1. That I am not, in any capacity, a party to a contract entered into between the Genesis Convention Center and the Victory Committee on October 27, 1987.

2. That I acted as agent for the Victory Committee as shown by the Lease Agreement attached to plaintiff's complaint.

3. That the Genesis Convention Center had apparent knowledge, based upon the Lease Agreement prepared by the Genesis Center, that I was acting on behalf of my principal and not in my individual capacity at the time the lease was executed.

4. At no time did I enter into a Lease Agreement with the Genesis Convention Center wherein I agreed to be personally liable for any obligation alleged to have been incurred by the Victory Committee.

5. At no time did I enter into a Lease Agreement with the Genesis Convention Center wherein I agreed to pay the sum set forth in the Lease Agreement or plaintiff's complaint.

6. At no time have I agreed to be personally liable, jointly or severally, along with Richard G. Hatcher and the Victory Committee for any obligation(s) of any kind or description.

Record, pp. 157–58.

■ The issue is not, however, whether Hatcher and Velez agreed to become personally liable for the debts of the Committee. Rather, the issue is whether they assented to the contract. If so, they became personally liable by operation of law. The uncontroverted evidence in this case demonstrates that the agreement had their approval.

■ Velez was the very person to negotiate the contract and authorize the services that were performed. *See Jim Host & Associates, supra,* at 785. She does not contest the fact that the agreement with Genesis created "obligations incurred in behalf of the association within the scope of the authority of the agent attempting to create the liability." *Williston on Contracts, supra,* at 449. Although she signed the contract as treasurer, Velez cannot realistically claim that, as a member, she simultaneously dissented to its formulation, nor does she make such a claim.

■ Nowhere in his affidavit does Hatcher claim the Committee was not authorized to enter into the agreement, or that he disavowed this particular contract, or that he did not indeed reap the benefits of the fundraiser held to support his re-election campaign. Once Genesis made and supported its motion for summary judgment, it was incumbent upon Hatcher and Velez to set forth specific facts showing a genuine issue for trial (i.e., that they did not assent to or ratify the agreement). Ind.Trial Rule 56(E). They have not done so.

■ The Committee makes the assertion that state election laws establish the exclusive remedy for Genesis in this case. The following provision requires a committee treasurer to execute a bond conditioned in part on:

(1) the faithful performance of the treasurer's duties without loss or detriment to any person interested in the performance of the treasurer's duties[.]

IC 3–9–1–16. Further,

An action on the bond required by [IC 3–9–1–16] may be maintained in the name of the state for the use of any persons interested in the faithful performance of the treasurer's duties and injured by a breach of the condition of the bond.

IC 3–9–1–17.

The Committee merely suggests that "it would appear" sections 16 and 17 limit Genesis' common law remedies. However, it is well settled that "the legislature does not intend by a statute to make any change

in the common law beyond what it declares either in express terms or by unmistakable implication." *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.* (1991), Ind., 578 N.E.2d 669, 673. A statute in derogation of existing common law must be strictly construed. *Id.* Construing the statute in this manner, we believe that these two provisions, which were repealed effective July 1, 1992, refer to duties outlined by statute in the election code. *See, e.g.,* IC 3–9–1–20 through –24. The election code does not alter the status of members of a not-for-profit, unincorporated association who authorize or ratify a contract made by, for, or in the name of the association.

Accordingly, the trial court is affirmed.

HOFFMAN and SHIELDS, JJ., concur.