A–PLUS JANITORIAL & CARPET CLEANING, an Oklahoma sole proprietorship; A.R.K. Ramos Foundry & Manufacturing Company, Inc., an Oklahoma corporation; Acura Neon, Inc., an Oklahoma corporation; Alpine Trucking, Inc., an Oklahoma corporation; Anderson Mechanical Inc., an Oklahoma corporation; Beeson Mechanical Contractors, Inc., an Oklahoma corporation; Bigby Companies, an Oklahoma partnership; Bridgeman Electric, Inc., an Oklahoma corporation; Carpet Masters Incorporated, an Oklahoma corporation; Cleo Weaver, Inc., an Oklahoma corporation; Computer Power Technologies, a division of Wiley Electric, Inc., an Oklahoma corporation; Craig County Farm Supply, an Oklahoma general partnership; E–Tech, Inc., an Oklahoma corporation; E–Z Stop, Corp., a Kansas corporation; E–Z Stop, Inc., an Oklahoma corporation; EMTEC Pest Control, Inc., an Oklahoma corporation; Gasoline Marketing, Inc., an Oklahoma corporation; George Mayer, Inc., an Oklahoma corporation; Griffith Petroleum Management Corporation, an Oklahoma corporation; Hardwall Fabricators, Inc., an Oklahoma corporation; Jack Griffith Petroleum Products, Inc., an Oklahoma corporation; LaFaver Fiberglass Corporation, an Oklahoma corporation; Miami Stone, an Oklahoma corporation; Miller Glass Company, an Oklahoma corporation; N–R Industries, Inc., an Oklahoma corporation; Oklahoma Ice Company, Inc., an Oklahoma corporation; Oklahoma Leather Products, Inc., an Oklahoma corporation; Ottawa County Farm Supply, an Oklahoma partnership; Peevy Construction Company, Inc., an Oklahoma corporation; Roto Hammer Company, an Oklahoma corporation; Sam Robinson, d/b/a Sam Robinson Signs and d/b/a Signa Outdoor Advertising; Standard Machine & Welding Works, an Oklahoma sole proprietorship; Total Marine Services, an Oklahoma corporation; Townley Dairy Company, an Oklahoma corporation; Tulsa Overhead Door Co., Inc., an Oklahoma corporation; Valet Wash And Lube Centers, Inc., an Oklahoma corporation; Wiley Electric, Inc., an Oklahoma corporation, Plaintiffs–Appellants,

v.

THE EMPLOYERS' WORKERS' COMPENSATION ASSOCIATION, an unincorporated group self-insurance association; American Citizens Insurance Agency, Inc., an Oklahoma corporation; Bomford, Couch & Wilson, an Oklahoma business trust; Commerce Insurance Agency, Inc., an Oklahoma corporation; Rich & Cartmill, Inc., an Oklahoma corporation; Bill Kelley, d/b/a Bill Kelley Insurance Agency; Sturdivant Insurance Agency, Inc., an Oklahoma corporation; United General Agency, Inc., an Oklahoma corporation; Carris Agency, Inc., an Oklahoma corporation; Al M. Snipes General Insurance, Inc., an Oklahoma corporation; Associated Underwriters, Inc., an Oklahoma corporation; Bill Beckman Company, an Oklahoma corporation; and The Employers Insurance Agents Group, a/k/a The TEWCA Agents Group, an unincorporated association, Defendants–Appellees.

No. 83227.

Supreme Court of Oklahoma.

April 8, 1997.

Cleve W. Powell, Northcutt, Clark, Gardner, Hron and Powell, Ponca City, for Appellants.

Clark O. Brewster John W. Anderson, Jr., Brewster, Shallcross & DeAngelis, Tulsa, for Appellee, The Employers' Workers' Compensation Association.

William C. Devinney, Oklahoma City, for Appellees, The Employers Insurance Agents Group and Associated Underwriters, Inc.

William J. Bergner, Debra L. Chionopoulos, Walker, Ferguson & Ferguson, Oklahoma City, for Appellees, American Citizens Insurance Agency, Inc., Commerce Insurance Agency, Inc., United General Agency, Inc., Carris Agency, Inc., Al M. Snipes General Insurance, Inc. and Bill Beckman Company.

John R. Paul, Suzanne Hale Costin, Lori Moon Kastner, Richards, Paul, Richards & Siegel, Tulsa, for Appellee, Sturdivant Insurance Agency, Inc.

Scott B. Wood, Barkley, Rodolf & McCarthy, Tulsa, for Appellee, Rich & Cartmill, Inc.

John B. Stuart, Wagner, Stuart & Cannon, Tulsa, for Appellee, Bomford, Couch & Wilson.

OPALA, Justice.

The dispositive issue on certiorari is whether the trial court erred in dismissing the plaintiffs' claims. We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

The plaintiffs/appellants are former members [plaintiffs, former or ex-members] of The Employers' Workers' Compensation Association [TEWCA], an unincorporated workers' compensation group self-insurance association organized under the authority of 85 O.S.1991 § 149.1.[1] TEWCA, formed in 1986, is comprised of employers who have united together for pooling their workers' compensation liabilities. Upon joining TEWCA (and for each renewal year) an employer agrees to be jointly and severally liable for the workers' compensation liabilities (of all group members) incurred during the current calendar year. The liability, once assumed, continues even after an employer leaves TEWCA.

At the time TEWCA was formed, several independent insurance agents [the Agents] created their own unincorporated association, the TEWCA Agents Group [the Agents Group or Group]. The Agents Group members were the sole approved and authorized marketing representatives for TEWCA. In furtherance of the Group's objectives, the agents solicited the plaintiffs and many other employers to join TEWCA.

In November 1992 TEWCA assessed its present and former members (approximately 1,000 employer-members) for additional contributions to satisfy a deficit of more than $3 million, accumulated during a six-year period (1986 through 1991).

Thirty-seven former TEWCA members brought suit against TEWCA, grounded on breach of contract, constructive fraud and

---

1. For the pertinent terms of 85 O.S.1991 § 149.1, see *infra* note 12.

actual fraud; and *alternatively* against the Agents Group (and its members) for negligence, breach of fiduciary duty, constructive fraud and actual fraud, which induced the plaintiffs to join TEWCA and renew annually their membership in the organization. They pressed for (a) exoneration of their liability for the initial (and any future) assessment, (b) TEWCA's indemnification for any future loss or liability to third persons and (c) recovery of deposits and credits seized by TEWCA in partial satisfaction of the levy.

The trial court dismissed the plaintiffs' first and second amended petitions[2] without prejudice to refiling. Its ruling was grounded on the view that the claims pressed are derivative in nature.[3] The *third amended petition* (in contest here) was challenged by six separate dismissal motions. By order filed *February 10, 1994,* the trial court (a) dismissed the claims against TEWCA and the Agents Group *without leave to amend* and (b) dismissed the claims against the other defendants (agents) for failure to state a claim upon which relief can be granted with-

out prejudice to refiling another amended petition.[4] Although the trial judge *noted at the hearing* on the motions that he viewed the claims against TEWCA and the Agents Group as derivative in nature, he *refused to specify any grounds for dismissal* of the third amended petition other than stating that it was for "failure to state a claim upon which relief may be granted."[5] When the plaintiffs failed timely to amend, the defendant agents pressed for a "final order of dismissal."[6] The claims against the remaining defendants were dismissed by orders of *February 24, 1994* and *March 8, 1994.* This plaintiffs' appeal is timely prosecuted from the three (February 10, February 24 and March 8) dismissal orders.

The Court of Civil Appeals affirmed the dismissal orders on appeal, concluding that (a) the plaintiffs' claims are derivative in nature and (b) the plaintiffs have alleged no harm peculiar to them, which would dispense with the necessity of bringing a derivative suit—*i.e.,* one pressed by TEWCA itself for the benefit of all interested persons (or by

---

**2.** The plaintiffs initially brought this action against (a) TEWCA and its administrator, (b) the lawyers and legal firms that served as chief counsel to TEWCA, (c) the claims-servicing organization for TEWCA, (d) the Agents Group and (e) the members (agents) of the Agents Group.

**3.** The trial court's rationale for the dismissal of the first amended petition (July 29, 1993) was: (a) "the action as plead is a derivative action belonging to the Defendant unincorporated association [TEWCA];" (b) in order to bring a derivative action the plaintiffs must comply with the requirements of 12 O.S.1991 § 2023, and (c) the plaintiffs failed to satisfy the § 2023 mandate. The second amended petition's dismissal (September 30, 1993) is based on similar grounds.

**4.** We are puzzled about the status of one defendant, Bill Kelley d/b/a Bill Kelley Insurance Agency, whose name is carried in the caption of the *third amended petition.* Although this defendant *addressed no instrument responsive* to that petition, his name was included in the February 10, 1994 dismissal order. The record is devoid of any material that would enlighten us on whether, through inadvertence, Kelley might have received the benefit of a dismissal plea he did not make. We are not called upon to assay here the effect of Kelley's want of timely answer (or of other responsive pleading) upon his continued status as a party defendant.

**5.** Although the defendants pressed several theories for the third amended petition's dismissal, the trial judge refused (at the December 15, 1993

hearing) to specify the grounds upon which the dismissal was rested:

"THE COURT: The Court will sustain the Motion to Dismiss both as to TEWKA and the TEWKA Agents Group, will dismiss without prejudice, prejudice as to the individual agents and allow plaintiff, if you wish, to amend and allege specifically as to the particular agents....

\* \* \*

·MR. POWELL: And is the Court—would you want to specify for us the grounds for the ruling to put into the—

THE COURT: I'd rather not be specific in that regard for the reasons I've said before. Let's let you all present that to the appellate court...."

**6.** The pertinent terms of 12 O.S.1991 § 2012(G) provide:

"G. FINAL DISMISSAL ON FAILURE TO AMEND. On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed. *If the amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice* shall be entered on motion except in cases of excusable neglect. In such cases amendment shall be made by the party in default within a time specified by the court for filing an amended pleading...." (Emphasis added.)

representatives of the association who would adequately represent its interests and those of its members).

### The Defendants' Attempt To Disqualify the Plaintiffs' Lawyer

■ After the parties had filed their supplemental briefs on certiorari, TEWCA moved (some two years after the suit began) to disqualify plaintiffs' counsel for an alleged conflict of interest. We referred that controversy to the trial judge, to sit as this court's special master, for a decision on fact and law issues relating to the claimed conflict.[7] The special master found no violation of counsel's ethical responsibilities and concluded that no conflict of interest was in existence. Upon *de novo* review of the special master's report, on file herein, this court approved the decision and denied the defendants' conflict-of-interest claim.[8]

## II

### THE MOTION TO DISMISS

■ A motion to dismiss for failure to state a claim upon which relief may be grant-

ed will not be sustained unless it should appear *without doubt* that the plaintiff can prove no set of facts in support of the claim for relief.[9] *Conley v. Gibson.*[10] We hold that, for the reasons to be explained in Parts III through VII *infra*, the plaintiffs' petition alleges facts upon which relief *may be available*. It is hence sufficient to withstand the defendants' quests for the claims' dismissal.

## III

### THE FORMER TEWCA MEMBERS HAVE STANDING TO BRING A DIRECT ACTION AGAINST THE DEFENDANT ASSOCIATIONS AND AGENTS

The defendants (TEWCA, Agents Group and agents) urge that the dismissal should stand because (a) the claims can only be pursued in a derivative action and (b) the plaintiffs lack standing to sue in a representative capacity as they failed to comply with the requirements of 12 O.S.1991 § 2023.1[11] for pressing a derivative claim. The plain-

---

7. *See in this connection Hadnot v. Shaw*, Okl., 826 P.2d 978, 982 (1992); *Grand River Dam Auth. v. Eaton*, Okl., 803 P.2d 705, 707 (1990); *Pierson v. Canupp*, Okl., 754 P.2d 548, 550 (1988); *Huff v. Huff*, Okl., 687 P.2d 130, 132 (1984).

8. A special master's findings are reviewable in this court by a *de novo* standard. *McCullough v. Safeway Stores, Inc.*, Okl., 626 P.2d 1332, 1334 (1981); *Werfelman v. Miller*, 180 Okl. 267, 68 P.2d 819, 820 (1937).

9. The terms of 12 O.S.1991 § 2012(B) provide in pertinent part:

" Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
\* \* \*
6. *Failure to state a claim upon which relief can be granted;*
\* \* \*
If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary

judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment. \* \* \*" (Emphasis added).
"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 568 n. 15, 107 S.Ct. 1410, 1417 n. 15, 94 L.Ed.2d 563 (1987); *Groce v. Foster*, Okl., 880 P.2d 902, 906 (1994); *Dyke v. Saint Francis Hospital, Inc.*, Okl., 861 P.2d 295, 298–299 (1993); *Frazier v. Bryan Memorial Hosp. Authority*, Okl., 775 P.2d 281, 289 (1989). *See also* Committee Comment to 12 O.S.1991 § 2012(B), which observes that § 2012(B) is virtually the same as Rule 12(b), Federal Rules of Civil Procedure [Fed.R.Civ.P.].

10. *Supra note 9*, 355 U.S. at 45–46, 78 S.Ct. at 102.

11. The terms of 12 O.S.1991 § 2023.1 provide:
"In a *derivative action brought by one or more* shareholders or *members to enforce a right* of a corporation or *of an unincorporated association, the* corporation or *association having failed to enforce a right which may properly be*

tiffs maintain their claims are personal—not derivative of another entity's legal demand. They are to redress individual harm and can hence be maintained in a direct action.

### A.

### *The Statutory Scheme Governing Group Self–Insurance Associations and Derivative Actions Pressed On Behalf of An Unincorporated Association*

TEWCA, an unincorporated association of approximately 1,000 members, was organized under the terms of 85 O.S.1991 § 149.1 [12] as a workers' compensation self-insurance group. That statute (a) permits multiple employers to pool their liabilities for the purpose of qualifying as a group self-insurer and (b) authorizes the Workers' Compensation Court to regulate group self-insurance asso-

ciations and to adopt rules [13] and procedures governing their establishment.[14] The Agents Group, an unincorporated association composed of 11 independent insurance agencies, was organized to function as the sole marketers of memberships in TEWCA.

At common law a voluntary unincorporated association was not recognized as a legal entity. Because it lacked a status distinct from the persons composing it, an unincorporated association had no capacity to become a party to an action. It could neither sue nor be sued.[15] Acting in clear derogation of the common law, the Legislature authorized suits against unincorporated organizations in their common name and provided that venue in these actions is the same as that prescribed for domestic corporations.[16] Section

---

*asserted by it,* the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. *The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the* shareholders or *members similarly situated in enforcing the right of the* corporation or *association.* The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." (Emphasis added.)

**12.** The pertinent terms of 85 O.S.1991 § 149.1(A) are:

"A. The Workers' Compensation Court shall adopt rules permitting two or more employers not otherwise subject to the provisions of Section 2b of this title to pool together liabilities under this act for the purpose of qualifying as a group self-insurer and each such employer shall be classified as a self-insurer. * * * "

**13.** Rule 3, Rules of the Administrator of the Workers' Compensation Court, regulates group self-insurance associations in accordance with the statutory mandate (amended eff. Jan. 1, 1990).

**14.** *American Insurance Association v. State Industrial Commission,* Okl., 745 P.2d 737, 738 (1987).

**15.** *Taxicab Drivers' Local Union No. 889 v. Pittman,* Okl., 322 P.2d 159, 166 (1958) (it is only where the legislature confers a legal status on a voluntary group that it enjoys the rights and duties comparable to those of a corporation, except in particular situations where the law will not permit the group to deny its assumed status); *Brown v. United States,* 276 U.S. 134, 140, 48 S.Ct. 288, 289, 72 L.Ed. 500, 503 (1928); *Askew v. Joachim Memorial Home,* 234 N.W.2d 226, 234 (N.D.1975); *Lyons v. American Legion Post No. 650 Realty Co.,* 172 Ohio St. 331, 175 N.E.2d 733, 735 (1961); *Bloom v. American Express Co.,* 222 Minn. 249, 23 N.W.2d 570, 572 (1946); *Jardine v. Superior Court in and for Los Angeles County,* 213 Cal. 301, 2 P.2d 756, 759 (1931). *See in this connection* Comment, Uniform Unincorporated Nonprofit Association Act (1992):

"Legal issues concerning *unincorporated, for profit associations* that are not partnerships and so not controlled by a partnership act would be governed by a state's other statutory or *common law.* Resort to one of the two partnership acts for the purposes of developing a common-law rule by analogy would be appropriate." (Emphasis supplied.)

**16.** The pertinent terms of 12 O.S.1991 § 182 are:

"*When any two or more persons associate themselves together and transact business for gain or speculation under a particular appellation, not being incorporated, they may be sued* by such appellation without naming the individuals composing such association and service of process may be had upon such association by personal service as provided by law for services of summons in civil actions, upon any member of such *unincorporated association .... Venue in such cases, in addition to that now provided, shall be the same as that provid-*

§ 2023.1 [17] of the 1984 Pleading Code—which is patterned on the Federal Rules [18]—creates a right of action, derivative in nature, for an unincorporated association. Its terms provide that a derivative action may not be maintained if it appears the plaintiff does not *"fairly and adequately"* represent the interests of similarly situated members in enforcing the right of the association.[19] In the context of shareholder derivative suits, this requirement has been construed to mean that plaintiffs bringing a derivative claim must be shareholders *at the time of the alleged wrong* as well as retain ownership *during the pendency of the lawsuit.*[20] The *continuous-ownership* requirement is based on the belief that only a party with an *ongoing proprietary interest in the corporation on behalf of which action is* maintained will adequately represent the corporation's interest in a derivative suit.[21]

## B.

### These Ex–TEWCA Members Lack Standing To Press A Derivative Claim

■ By analogy to the *continuous-owner-ship-rule* requirement for shareholder derivative actions,[22] it is clear that *a former member* of an unincorporated association—*i.e.,* one who no longer has a stake or interest in the association—cannot be deemed fit to represent *fairly and adequately* the association in a derivative suit.

■ Moreover, to press a derivative claim, a plaintiff must have standing as a non-Hohfeldian plaintiff—*i.e.,* one who sues to secure judicial relief that would benefit other persons or the community as a whole.[23] The interest tendered for judicial vindication in a derivative action is neither personal nor

---

*ed for actions involving domestic corporations."* (Emphasis supplied.)

**17.** For the pertinent terms of 12 O.S.1991 § 2023.1, see *supra* note 11.

**18.** Rule 23.1, Fed.R.Civ.P., is identical to 12 O.S. 1991 § 2023.1, *supra* note 11, except for a deleted provision that pertains to practice in federal courts. *See* Committee Comment to § 2023.1.

**19.** *Guenther v. Pacific Telecom, Inc.,* 123 F.R.D. 341, 344–345 (D.Or.1987); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7 Fed.Prac. & Proc.Civ.2d §§ 1826, 1828. In *Guenther, supra* at 344, the court notes that the "rule that the representative must fairly and adequately represent the class is one of constitutional magnitude. This is due to the binding effect of derivative and class actions on absent class members."

**20.** *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1443 n. 2 (10th Cir.1995); *Guenther, supra* note 19 at 344; *Lewis v. Chiles,* 719 F.2d 1044, 1047 (9th Cir.1983); *Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra* note 19 at § 1826.

**21.** The continuous-ownership rule was announced by the Court in *Hawes v. City of Oakland,* 104 U.S. (14 Otto) 450, 26 L.Ed. 827 (1881). It was later carried into federal equity rules and preserved in Federal Rule 23(b)(1). The rule, which was aimed at preventing federal courts from being used to prosecute purchased litigation, rested on a belief that a party with an ongoing proprietary interest in the corporation

will adequately represent the corporation's interest in a derivative action. *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, supra* note 19 at § 1828.

**22.** For the continuous-ownership rule, see *supra* notes 20 and 21.

**23.** A *Hohfeldian plaintiff* is a legal entity seeking a judicial determination that it has "a right, a privilege, an immunity or a power" *vis-a-vis* the opposite party in litigation. Jaffe, The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff, 116 U.Pa.L.Rev. 1033 (1968). A *non-Hohfeldian plaintiff,* on the other hand, sues to secure judicial relief that would benefit other persons or the community as a whole. *Id.* Toxic Waste Impact Group, Inc. v. Leavitt, Okl., 890 P.2d 906, 914 (1994)(Opala, J., concurring). The *qui tam* plaintiff of the common law, who sues primarily to benefit a public entity, is typically non-Hohfeldian. *State ex rel. Trimble v. City of Moore,* Okl., 818 P.2d 889, 894 (1991); see *Flast v. Cohen,* 392 U.S. 83, 120, 88 S.Ct. 1942, 1963, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Scott, Standing in the Supreme Court—A Functional Analysis, 86 Har.L.Rev. 645, 660–662 n.1 (1973); Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 604–607 (1968); see also *Sierra Club v. Morton,* 405 U.S. 727, 732 n. 3, 92 S.Ct. 1361, 1364–1365, 31 L.Ed.2d 636 (1972); *Clark v. Valeo,* 559 F.2d 642, 675 (D.C.1977). In a stockholder's derivative suit the plaintiff is in the very same category as a *qui tam* plaintiff. *Warren v. Century Bankcorporation, Inc.,* Okl., 741 P.2d 846, 847, 853 (1987).

proprietary.[24] *The plaintiffs here are suing not to confer a benefit on TEWCA, but for the exoneration of their own individual liability.* Because these *former* members no longer have a stake in TEWCA and are trying *to affect that entity in a negative manner,* they cannot be described as acting on its behalf as non-Hohfeldian plaintiffs.[25]

## C.

### The Plaintiffs Are Entitled To Be Considered Individually As Hohfeldian Plaintiffs [26] In A Direct Suit

◼ The plaintiffs' claim against TEWCA is founded on theories of breach of contract, constructive fraud and actual fraud. They seek (a) recovery of all deposits or credits seized by TEWCA in partial satisfaction of the assessment, (b) a declaration that they have no liability to TEWCA for the initial assessment or any future assessments and (c) TEWCA's indemnification for any future loss or liability to third persons (*i.e.,* injured employees of current or former TEWCA members) arising out of their participation in TEWCA.

The plaintiffs' *alternative claim* against the Agents and the Agents Group is grounded on negligence, breach of fiduciary duty, constructive fraud and actual fraud by the agents, which induced the plaintiffs to join the organization and renew annually their TEWCA membership.[27] Because of alleged misrepresentations and omissions, the plaintiffs urge, the true nature and extent of their TEWCA participation risk was concealed from them. As a result, the plaintiffs contend, they were induced to continue their TEWCA membership and to stand exposed to further liability for that association's accumulating deficits.

Not all current and former TEWCA members, the plaintiffs contend, have a similar claim against their insurance agent. Some members were adequately informed by their agent or obtained independent knowledge of the true facts about TEWCA. Others either left TEWCA before the adverse material developments occurred or joined it after that period. The claim against *all* the defendants—except for each plaintiff's claim against its own insurance agent—is founded upon the vicarious liability of the Agents Group and its members for the torts of each member committed in furtherance of the Group's business.

Although the trial court's *earlier rulings* were rested upon the plaintiffs' lack of standing to bring a derivative action, the dismissal

---

**24.** For the meaning of "personal" interest, see 76 O.S.1991 § 6. Its terms are:

"Besides the personal rights mentioned or recognized under law, every person has, subject to the qualifications and restrictions provided by law, the *right of protection from bodily restraint or harm,* from *personal insult,* from *defamation,* and from *injury to his personal relations.*" (Emphasis added.)

**25.** Because we conclude that the plaintiffs here are not pressing a derivative claim, we need not address the contention that this litigation is premature because of an ongoing investigation into the plaintiffs' claim of mismanagement by the TEWCA Board and its supervisor. That issue might have been viable if the plaintiffs had brought a derivative action.

**26.** For the definition of a Hohfeldian plaintiff, see *supra* note 23.

**27.** The ex-TEWCA members claim that (a) each plaintiff was induced to join TEWCA by certain misrepresentations by its agent as to the risk of self-insuring through TEWCA, including a representation that TEWCA would maintain reinsurance adequate to pay all losses that exceed the aggregate of premiums collected from the members; (b) each agent had a direct professional and fiduciary duty to inform its client as to the nature and extent of the risk of participation in TEWCA *before joining* and thereafter to monitor carefully TEWCA's operations and to disclose all subsequent *material facts* which adversely reflected upon the risk of continued participation in TEWCA; and (c) each agent negligently or intentionally failed to inform its client of several material adverse developments in TEWCA's activities. Some of the adverse conditions are (a) the 1989 deletion (from the membership agreement) of the requirement that TEWCA maintain reinsurance adequate to pay all losses which exceed the aggregate of premiums collected, (b) TEWCA's decision not to purchase any reinsurance for 1990, and (c) the high accumulating deficits in TEWCA's operations from 1989 through 1992. The plaintiffs urge that the Agents Group was formed primarily for the agents' business purposes. The agents collected annual fees from TEWCA for marketing memberships in TEWCA and the Agents Group was paid annual commissions on TEWCA's purchase of reinsurance.

orders in contest here are silent on this issue.[28] Measuring this claim by the narrow *Conley v. Gibson*[29] test, we cannot conclude from the face of the third amended petition that the plaintiffs can prove no set of facts entitling them to relief on their selected theory.

## IV

### THE ARGUMENT SUGGESTING MISJOINDER OF PARTIES AND OF CLAIMS

One motion to dismiss urges that (a) the plaintiffs' claim against this party was misjoined with those pressed against the other defendants and (b) the joinder of such diverse and numerous parties and claims in one lawsuit can only be correct if the claims are derivative. Another motion urges misjoinder of claims and parties by the inclusion in one action of distinctly separate claims. According to the movant, misjoinder (a) occurred when fraud claims were pressed against some parties and derivative claims against others and (b) resulted in naming as defendants some parties who could only be sued in another venue.

### A.

#### *Permissive Joinder Of Parties*

The terms of 12 O.S.1991 § 2020(A)[30] allow the permissive joinder of parties. Because § 2020 parallels the language of Federal Rule 20, both state and federal jurisprudence on the subject is instructive. *Federal Rule 20(a)* imposes *two requisites* for the joinder of parties: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all the parties will arise in the action.[31] There is no rigid rule on what constitutes the same series of transactions or occurrences for purposes of joinder under Federal Rule 20.[32] The rule is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, all with a view to preventing multiple lawsuits.[33] *Federal Rule 21* provides a mechanism for remedying either

---

**28.** For the basis of the trial court's dismissal orders, see *supra* note 5.

**29.** *Supra note* 9 at 45–46, 78 S.Ct. at 102.

**30.** The terms of 12 O.S.1991 § 2020(A) provide in pertinent part:

"A. PERMISSIVE JOINDER.
1. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative:
 a. in respect of or *arising out of the same transaction or occurrence,* or
 b. if the claims *arise out of a series of transactions or occurrences* and *any question of law or fact common to all these persons will arise in the action,* or
 c. if the claims are connected with the subject matter of the action.
2. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative:
 a. any right to relief in respect of or arising out of the same transaction or occurrence, or
 b. if the claims arise out of a series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action, or
 c. if the claims are connected with the subject matter of the action.

3. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities. * * *" (Emphasis added.)

**31.** *Desert Empire Bank v. Insurance Co. of North America,* 623 F.2d 1371, 1375 (9th Cir.1980); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 916 (9th Cir. 1977); *Gruening v. Sucic,* 89 F.R.D. 573, 574 (E.D.Pa.1981); *Demboski v. CSX Transportation, Inc.,* 157 F.R.D. 28, 29 (1994). *See* generally Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra* note 19 at § 1653.

**32.** *Vulcan Society of Westchester County v. Fire Department of the City of White Plains,* 82 F.R.D. 379, 387 (S.D.N.Y.1979); *Hall v. E.I. Du Pont De Nemours & Co.,* 345 F.Supp. 353, 381 (E.D.N.Y. 1972).

**33.** *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974); *League, supra* note 31 at 917. "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

the misjoinder or nonjoinder of parties. Although the rule's text is silent on what constitutes misjoinder or nonjoinder, federal jurisprudence makes it clear that parties are misjoined when they fail to satisfy either prong of Federal Rule 20(a)'s two-part test for permissive joinder.[34]

 The terms of § 2021 provide *that misjoinder of parties is not a ground for dismissal.*[35] The correct remedy for misjoinder is to "drop" (or remove) the party who has been incorrectly joined.[36] Whether a removal quest should be granted or denied rests within the discretion of the trial court.[37] Although some defendants conceded below that misjoinder is not a basis for dismissal and that parties may be removed or added by the court, the *sole relief pressed by all defendants* in their motions below was dismissal of the action. The record is *devoid* of

indication that any defendant pressed below for individual severance from the case.

**B.**

*Permissive Joinder of Claims*

 The terms of 12 O.S.1991 § 2018(A) and (B)[38] allow the joinder of a party's claims or remedies against an opponent (or opponents) in the same action. Extant jurisprudence construing the corresponding Federal Rule 18 teaches that once parties are correctly joined in a single action under Federal Rule 20(A)—because the transaction (or common-question) test has been satisfied—additional claims, whether related or unrelated (or by or against all or less than all of the parties), may be joined under Federal Rule 18(a).[39] This rule expresses a

---

**34.** Rule 21 applies when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact. *Hyplains Dressed Beef, Inc. v. EE Operating Corporation,* 142 F.R.D. 174, 176 (D.Kan.1992); *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, supra* note 19 at § 1683, citing *Condosta v. Vermont Elec. Co–op., Inc.,* 400 F.Supp. 358, 366 (D.Vt.1975).

**35.** The terms of 12 O.S.1991 § 2021 are:

"MISJOINDER AND NONJOINDER OF PARTIES. *Misjoinder of parties is not ground for dismissal of an action.* Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately." (Emphasis added.)
*See also* Fed.R.Civ.P. 21; *Fox v. Board of Trustees of the State Univ. of New York,* 148 F.R.D. 474, 484 (N.D.N.Y.1993); *Field v. Volkswagenwerk,* 626 F.2d 293, 306 (3rd Cir.1980); *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1249 (3rd Cir.1972). Parties may be removed or added on motion of any party at any stage of the action and on such terms as are just. *Id.*

**36.** *Fox, supra* note 35 at 484; *Hyplains, supra* note 34 at 176; *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, supra* note 19 at § 1683.

**37.** *Hyplains, supra* note 34 at 176; *K–B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1153 (10th Cir.1985).

**38.** The terms of 12 O.S.1991 § 2018 are:

"A. JOINDER OF CLAIMS. A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, *may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party.* B. JOINDER OF REMEDIES; FRAUDULENT CONVEYANCES. Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money. C. CONSOLIDATION. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. D. SEPARATE TRIALS. *The court,* in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues,* always preserving inviolate the right of trial by jury." (Emphasis added.)

**39.** *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, supra* note 19 at § 1585. Federal Rule 18(a), as amended in 1966, no longer provides that when there are multiple parties the

philosophy of liberality "toward entertaining the broadest possible scope of action consistent with fairness to the parties." [40] The purpose of the rule is to avoid multiplicity of litigation. [41]

As a practical matter, Federal Rule 18(a) must be read in conjunction with Federal Rule 42(b), [42] which gives the court broad discretion to order separate trials of claims or issues. [43] Courts generally order separate trials only when *clearly necessary*. [44] A single trial will generally lessen the delay, expense, and inconvenience to the parties and the courts. [45] The movant has the burden to show prejudice. [46]

When interposed below by some of the defendants, misjoinder of both parties and claims was urged not as part of a motion for severance of a party defendant or for separate trial of claims but rather *as a ground for dismissal.* The trial judge made

no disposition of the pressed misjoinder theory. [47] An appellate court may not make first-instance rulings *on facts or law.* [48] When necessary dispositions are absent, the case must be remanded with directions that they be effected at nisi prius. [49] Because the misjoinder issue does not pertain *directly to dismissal* of the plaintiffs' claim, we will not address that question here. It should be dealt with in a post-remand proceeding. On review of the dismissal orders under the *Conley v. Gibson* [50] standard—as we must— we cannot say it *appears beyond doubt* that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief on this theory.

## C.

### *Class Action*

The plaintiffs' first and second amended petitions are styled in the nature of

relief sought against the defendants must relate to the same transaction or occurrence. *Kaminsky v. Abrams*, 41 F.R.D. 168, 171 (S.D.N.Y. 1966).

**40.** *Gibbs, supra* note 33 at 724, 86 S.Ct. at 1138. The "joinder of claims, parties and remedies is strongly encouraged" by the Court. *Id.* at 724, 86 S.Ct. at 1138.

**41.** *Kaminsky, supra* note 39 at 171.

**42.** The terms of 12 O.S.1991 § 2018(C) and (D) are identical to Federal Rule 42, Fed.R.Civ.P., except for the deletion of all references to the Seventh Amendment. *See* Committee Comment to 12 O.S.1991 § 2018.

**43.** *Davis v. Mason County*, 927 F.2d 1473, 1479 (9th Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 551 (9th Cir.1989); *Stoddard v. Ling–Temco–Vought, Inc.*, 513 F.Supp. 314, 327 (C.D.Cal.1980); In Re Paris Air Crash of March 3, 1974, 69 F.R.D. 310, 319 (C.D.Cal.1975); *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, supra* note 19 at § 1586.

**44.** *Corrigan v. Methodist Hospital*, 160 F.R.D. 55, 56 (E.D.Pa.1995), citing *Wetherill v. University of Chicago*, 565 F.Supp. 1553, 1556–67 (N.D.Ill.1983)(citing 5 James William Moore, Moore's Federal Practice ¶ 42.03[1], at pgs. 42– 37 to 42–38 and n.4 (1982)). The Advisory Committee Note accompanying the 1966 amendment to Federal Rule 18(a) states in part: "It is emphasized that amended Rule 18(a) deals only with pleading. As already indicated, a claim properly joined as a matter of pleading need not be proceeded together with the other claims if fairness or convenience justifies separate treat-

ment." *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, supra* note 19 at § 1586. *Corrigan, supra* at 56, notes that one federal court (*Tri–R Sys. v. Friedman & Son*, 94 F.R.D. 726, 727 (D.Colo.1982)) found three factors to be weighed in determining whether to order separate trials for separate defendants. These are whether separate trials (1) will further the convenience of the parties, (2) will promote judicial economy, and (3) will avoid substantial prejudice to the parties.

**45.** *Corrigan, supra* note 44 at 56–57, citing 5 James William Moore, Moore's Federal Practice ¶ 42.03[1] at pgs. 42–43 (1994); *Laitram Corp. v. Hewlett–Packard Co.*, 791 F.Supp. 113, 115 (E.D.La.1992); *Willemijn Houdstermaatschaapij BV v. Apollo Computer*, 707 F.Supp. 1429, 1433 (D.Del.1989); *Stoddard, supra* note 43 at 327.

**46.** *Moore, supra* note 44, at ¶ 42.03[1], pgs. 42– 48.

**47.** For the trial court's explanation of its refusal to give the specific grounds for dismissal, see *supra* note 4.

**48.** *American, supra* note 14 at 740.

**49.** *American, supra* note 14 at 740; *Matter of Estate of Bartlett*, Okl., 680 P.2d 369, 377 (1984); *Davis v. Gwaltney*, Okl., 291˙ P.2d 820, 824 (1955); see also *Thomas v. Zoning Bd. of Appeals, Etc.*, 381 A.2d 643, 646 (Me.1978).

**50.** *Conley, supra note* 9, 355 U.S. at 45–46, 78 S.Ct. at 102.

a class action. The captions in both petitions state that the suit was brought on behalf of the plaintiffs and "all others similarly situated." *The quoted text was removed from the caption of the third amended petition.* According to the plaintiffs, they now seek redress solely upon their individual claims.

It is not fatal to the prosecution of the plaintiffs' individual claims that they are not joined by all similarly situated plaintiffs. If the named plaintiffs have separate and distinct interests which may be dispositive of the claim, class certification may be inappropriate.[51] If so, the plaintiffs' claims may proceed to final adjudication *sans* a class-action certification.

## V

### VENUE

Some of the defendants based their dismissal quests on mislaid venue. 12 O.S.1991 § 2012(B).[52] They argued, *inter alia,* that (a) venue lies not in Tulsa County, where this action was brought, but in the county where the primary events pertaining to the claim against them had occurred, (b) Tulsa County is not their place of business, and (c) their principal officer does not reside in Tulsa County. According to the Agents Group, its service agent can only be served in Oklahoma County.

Mislaid venue—no matter how facially apparent—neither reveals a jurisdictional defect nor tenders a contest over cognizance.[53] *Pribram v. Fouts* [54] teaches that when a challenge to venue is interposed *and sustained,* the trial judge has a duty *to transfer the case* to the district court in the county in which venue may be laid. The issue of mislaid venue, when tested by the *Pribram* standard, addresses not whether a claim should be dismissed, but rather whether it should be *moved to another location.* Those critical findings and conclusions are absent from the record. Since the trial court has not yet reached the venue question,[55] we will not review it by the *Pribram* standard.[56] Measuring this claim by the *Conley v. Gibson* [57] test, we cannot say it *appears beyond doubt* that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. The defendants are free to renew their venue challenge in the post-remand process.

## VI

### VICARIOUS LIABILITY

The plaintiffs' third amended petition alleges that the Agents Group and its members

**51.** *See, e.g., Ammons v. American Family Mutual Ins. Co.,* 897 P.2d 860, 863 (Colo.App.1995).

**52.** The defendants' dismissal quests were grounded on 12 O.S.1991 § 2012(B), which provides in pertinent part:
"B. HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
* * *
3. *Improper venue;* * * *." (Emphasis added.)

**53.** *Robinson v. Oklahoma Employment Sec. Com'n,* Okl., 932 P.2d 1120, 1124 (1997)(Opala, J., concurring). A final decision on venue, even if patently wrong, will nonetheless *stand impervious to a later jurisdictional attack. Toxic Waste Impact Group, Inc. v. Leavitt,* Okl., 890 P.2d 906, 915 (1994) (Opala, J., concurring); *Bill Hodges Truck Co. v. Gillum,* Okl., 774 P.2d 1063, 1067

(1989); *Ferguson v. Ferguson Motor Co.,* Okl., 766 P.2d 335, 338 (1988); *Citizens State Bank of Hugo v. Hall,* Okl., 413 P.2d 513, 516 (1966); *Woodrow v. Ewing,* Okl. 263 P.2d 167, 171 (1953).

**54.** Okl., 736 P.2d 513, 516 (1987); *Robinson, supra* note 53 at 1124 (Opala, J., concurring). *See in this connection Young v. Walton,* Okl., 807 P.2d 248, 250 (1991)(in an appeal from dismissal of an action against a public official on grounds of mislaid venue, the court reversed the order with directions to transfer the case to the correct county).

**55.** Although at the December 15, 1993 hearing some of the defendants urged mislaid venue as a basis for dismissal, the trial judge refused to specify the basis of his decision. *See supra* note 4.

**56.** *American, supra* note 14 at 740.

**57.** *Conley, supra* note 9, 355 U.S. at 45–46, 78 S.Ct. at 102.

are jointly and severally liable for the "actions, errors and omissions" of each individual agent. They urge that the liability of the individual agent-member for the torts of another depends upon the nature and purpose for which the association was formed.[58] If the group is created for business purposes, the plaintiffs reason, the individual members are to be treated as partners [59] and hence as jointly and severally liable for the torts of other partners committed in the course and scope of partnership activities.[60] According to the plaintiffs, the Agents Group (a) was organized to promote the business of each of its (agent) members and (b) was paid by TEWCA sizeable commissions for the purchase of reinsurance. The plaintiffs conclude that the Agents Group and the agents are *vicariously liable* for the torts of each member committed in connection with their joint enterprise.

■ One of the defendant agents (Sturdivant Insurance Agency) counters that the issue of vicarious liability was not addressed below because the plaintiffs failed to state a claim against the agents for which relief could be granted. Sturdivant urges a claim cannot be stated against it because it had not sold to any of the plaintiffs their membership in TEWCA.

■ Agency is generally a question of fact to be determined by the trier.[61] If the existence of a partnership is disputed, the question presented is for the court or jury.[62] Because the agents' status tenders a fact issue here, these defendants cannot by operation of law be deemed partners or sub-agents (for the purpose of soliciting new TEWCA members). The burden of proving agency or partnership, including not only the fact of its existence but also its nature and extent, is ordinarily cast upon the party who raises it.[63] The plaintiffs' theory of vicarious liability—whether based on the general principles of agency or those of partnership—gives rise to a fact question. The parties did not present any evidence below. The trial court is free to address the issue on remand.[64]

Measuring the third amended petition by the *Conley v. Gibson* test,[65] we cannot say it appears beyond doubt that the plaintiffs can prove no set of facts in support of the claim which could entitle them to relief on this theory.

## VII

## FAILURE TO PLEAD FRAUD WITH PARTICULARITY

The defendants argue that the allegations of constructive and actual fraud are not plead with the particularity required by 12 O.S. 1991 § 2009(B).[66]

■ The allegations of fraud must be stated with sufficient particularity to enable

---

**58.** The plaintiffs direct us to *Security–First National Bank of Los Angeles v. Cooper*, 62 Cal. App.2d 653, 145 P.2d 722 (1944); *F.D.I.C. v. Tennesseans for Tyree*, 886 F.2d 771 (6th Cir. 1989).

**59.** The plaintiffs rely on *Victory Committee v. Genesis Convention Center of the City of Gary*, 597 N.E.2d 361 (Ind.App.1992); *Hutchins v. Grace Tabernacle United Pentecostal Church*, 804 S.W.2d 598 (Tex.App.1991); *Guyton v. Howard*, 525 So.2d 948 (Fla.App.1988); *Shortlidge v. Gutoski*, 125 N.H. 510, 484 A.2d 1083 (1984); *Blair v. Southern Clay Manufacturing Co.*, 173 Tenn. 571, 121 S.W.2d 570 (1938).

**60.** The plaintiffs cite for this proposition 54 O.S. 1991 §§ 213, 215(a).

**61.** *Bell v. Tollefsen*, Okl., 782 P.2d 934, 938 (1989); *Keel v. Titan Construction Corp.*, Okl., 639 P.2d 1228, 1230 (1981); *Paul Hellman, Inc. v. Reed*, Okl., 366 P.2d 391, 393 (1961); *Magnolia Petroleum Co. v. Angelly*, Okl., 306 P.2d 309, 315 (1955). The law makes no presumption of

agency. *Coe v. Esau*, Okl., 377 P.2d 815, 818 (1963).

**62.** *Connelly v. Johnson*, Okl., 385 P.2d 448, 451–452 (1963); *Miller v. Miller*, Okl., 261 P.2d 594, 595 (1953); *Moore v. Beier*, 202 Okl. 63, 210 P.2d 359 (syl.1) (1949); *Moore v. Diehm*, 200 Okl. 664, 199 P.2d 218, 219 (1948).

**63.** *Miller, supra* note 62 at 595; *Bell, supra* note 61 at 939.

**64.** *American, supra* note 14 at 740.

**65.** *Conley, supra* note 9, 355 U.S. at 45–46, 78 S.Ct. at 102.

**66.** The terms of 12 O.S.1991 § 2009(B) are:

"B. FRAUD, MISTAKE, CONDITION OF THE MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be *stated with particularity*. Malice, intent, knowledge, and other condition

the opposing party to prepare his/her responsive pleadings and defenses. *Gay v. Akin.*[67] *Particularity* does not mean the plaintiff has to plead detailed evidentiary matters.[68]

 The method for securing the missing information is not by pressing for dismissal but rather by a *motion to supply the necessary particulars* that would support the allegations of fraud. Because the record is devoid of any *denied quest for particulars,* the defendants are not entitled to have the petition tested by the *Gay v. Akin* rule. Applying the *Conley v. Gibson* standards,[69] we find that the petition, even if wanting in some particularity, is not subject to dismissal. The defendants are entitled to a post-remand opportunity to press for specific information.

### SUMMARY

The plaintiffs, qua *former* TEWCA members, lack standing to represent *fairly and adequately* the interests of TEWCA in a derivative action. Measuring this claim by the *Conley v. Gibson* standard—as we must—we cannot say, on this record, that it appears beyond doubt the plaintiffs can prove no set of facts *in support of their individual claims.*

Misjoinder (of parties and claims) and failure to plead fraud with particularity are not grounds for dismissal. The correct remedy for misjoinder is to sever (or remove) the party that has been incorrectly joined. When multiple parties are correctly brought into a single action, additional claims, whether related or unrelated, may be joined. Separate trials of claims or issues may be ordered if fairness or convenience justifies separate treatment. The method for securing absent information on fraud allegations

is by requesting the missing particulars. The defendants are entitled to a post-remand opportunity to press their quests by motion. In short, defendants' objections to misjoinder of parties and claims and to lack of particularity entitle them neither to dismissal's affirmance nor to other appellate relief.

When a challenge to mislaid venue is interposed and sustained, the case must be transferred to the district court in the county where venue may be laid. The existence of an agency relation is generally a question *in pais* for the trier. A vicarious liability theory based on agency status of the parties gives rise to a fact question. Because the trial court has made no ruling on either mislaid venue or on vicarious liability, the defendants are free to renew their objections in the post-remand process. On certiorari granted upon the plaintiffs' petition,

**THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE TRIAL COURT'S DISMISSAL ORDERS ARE REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS PRONOUNCEMENT.**

KAUGER, C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA, and WILSON, JJ., concur.

HODGES, J., concurs in Parts I, II, III, IV, V, and VI and dissents from Part VII.

WATT, J., dissents.

SUMMERS, V.C.J., not participating.

---

of mind of a person may be averred generally." (Emphasis added.)
*See also* Committee Comment to 12 O.S.1991 § 2009(B), which observes that Rule 9(b), Fed. R.Civ.P. is "incorporated exactly" in § 2009(B).

**67.** Okl., 766 P.2d 985, 993 (1988). *See also Brown v. Founders Bank and Trust Co.,* Okl., 890 P.2d 855, 862 (1994); *Gianfillippo v. Northland Cas. Co.,* Okl., 861 P.2d 308, 310–311 (1993).

**68.** *Gay v. Akin, supra* note 67 at 953; *Brown, supra* note 67 at 862; *Gianfillippo, supra* note 67 at 310–311.

**69.** For the *Conley v. Gibson* standard, see *supra* note 9. Persuasive circuit jurisprudence views defects in pleading fraud (for want of particularity) as falling within the general rule of *Conley v. Gibson. Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674, 679 (6th Cir.1988); *Durham v. Business Management Assocs.,* 847 F.2d 1505, 1511–1512 (11th Cir.1988); *Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir.1985); *Howell Petroleum Corp. v. Weaver,* 780 F.2d 1198, 1199 (5th Cir.1986).